Chase, J.
 

 The charter of the plaintiff, a municipal corporation, provides generally and expressly for the enactment of ordinances to preserve the health, safety and welfare of its inhabitants, and for such other purposes as the interests of the municipality and its citizens require. (Charter City of Rochester, L. 1901, ch. 155, section 85.)
 

 It also provides: “The board of contract and supply is authorized to let contracts for periods exceeding one year and providing for the payment of specified annual amounts thereon, for the collection, removal and disposal of ashes, garbage and dead animals, for the cleaning and sweeping of streets, * * *.” (Charter City of Rochester, section 235.)
 

 It also provides: “ The city of Rochester may maintain actions in courts of record of competent jurisdiction to restrain violations of penal and other ordinances of the common council.” (Charter City of Rochester, section 126.)
 

 In 1901 said city duly enacted an ordinance, the material part of which is as follows: “No person shall collect or carry on the business of scavenger, collector of garbage, bones or kitchen refuse *
 
 *
 
 * without a license from the bureau (bureau of health), but no license for the col
 
 *309
 
 lection of garbage, dead animals, bones or kitchen refuse shall hereafter be issued except to the person or persons, firm or corporation having a contract with the city for the collection of garbage therein. * * * The bureau of health is hereby directed .to revoke and cancel all licenses heretofore issued and unexpired for the collection of garbage within the city, except the license issued to the Genesee Reduction Company, the city garbage contractor.”
 

 This action was brought April 14, 1909, to enjoin the defendant from violating such ordinance. Prior to 1907 said city had an ordinance relating to the collection of garbage by which licenses to collect garbage were issued to a number of persons including the defendant. On the 12th of December, 1906, the plaintiff entered into a contract with certain persons doing business under the name of Genesee Reduction Company for the collection and removal of garbage and dead animals in said city for five years from January 1st, 1907, and for the disposal of such garbage and dead animals in a plant without the corporate limits of the city for which it agreed to pay said company the sum of $70,000 per year. The license theretofore existing to the defendant was canceled. The court in this action found, among other things, as follows:
 

 “ Third.
 
 That the defendant is a farmer living just outside of the City of Rochester in the town of Gates, Monroe County, hi. Y., and is engaged in raising hogs. That in pursuance of this business he purchased from a number of the clubs, restaurants and larger hotels within the city, such portions of food as had been rejected for human consumption, consisting generally of bread crumbs and scraps, meat scraps, orange peel, banana skins, chicken bones, potato scraps and peelings, cabbage leaves, egg shells, onions, and carrot trimmings, and other similar materials. That such materials so purchased by the defendant consisted in part of food refuse and trim
 
 *310
 
 mings unsuitable for human consumption and rejected in the preparation of food for the table; and some consisted. of scraps of food which had been actually served, remained uneaten and scraped from plates into the cans provided in such hotels and restaurants for food stuffs so rejected.
 

 “
 
 Fourth.
 
 That the defendant from time to time, and usually several times a week, sent his wagons into the city, where they proceeded from place to place to the several hotels, clubs, and restaurants with the proprietors of which he had contracted for such materials, where such materials were collected and transported to the defendant’s farm for use in feeding hogs. * * *.
 

 “ That the materials so collected by the defendant from such hotels and restaurants were commonly mingled in the cans in which they were placed awaiting collection by the defendant, and were unfit for human consumption. That such materials were commonly of a kind and character calculated to undergo rapid fermentation and decomposition at ordinary temperatures, and required frequent, regular collections and careful handling and disposition in order to avoid the development in such materials of physical and chemical conditions that would make such materials a menace to the health and safety of people in the vicinity where they were kept or taken.
 

 “
 
 Fifth.
 
 That the defendant had been continuously collecting such materials from such hotels and restaurants in the manner above stated for a period of more than six months prior to the commencement of this action, during all of which period he had no license for the collection of garbage, bones and kitchen refuse within the city as required by said ordinance; that defendant was notified on a number of occasions, prior to the commencement of this action, by the police officers of the city of Rochester that he was violating the provisions of the health ordinance by making such collections without a license, and was, on a number of' occasions prior to the commence
 
 *311
 
 ment of this action, directed by said police officers to stop the making of such collections; and said defendant failed and refused to comply with such directions.”
 

 The findings show that the defendant is continuously and willfully disobeying the ordinance. A large part of the specific things collected by the defendant consists of bones and table refuse. To that extent the things collected are within the express language of the ordinance. The defendant, who speaks with knowledge and experience, recognizes all of the specific things collected by him as garbage, as appears from his testimony, in which he says: “ I have been engaged in the collection of garbage for ten years and was one of the private collectors in the city who procured a license under the old system when licenses were issued to a number of private collectors.”
 

 Property rights cannot he lawfully invaded under the
 
 pretense
 
 of protecting the public health. If, however, a municipality provides that garbage, hones and kitchen refuse which are or may be reasonably expected to become a nuisance and a menace to public health if not promptly collected and removed in a sanitary manner, shall he collected and removed at specified times and in a particular manner and by a particular contractor, it is not necessarily unconstitutional even if private rights are thereby incidentally invaded. Such supervision, when reasonable, is not only lawful but an affirmative duty imposed upon municipalities. An ordinance affecting personal rights must he a reasonable regulation, in good faith designed to accomplish the general public good for which its adoption is authorized.
 

 It is conceded that garbage, bones and kitchen refuse, particularly when mingled- in a common receptacle, will ferment and decompose at ordinary temperatures, within a comparatively short time, and that when so fermented and decomposed they constitute a menace to public health. Because they are a menace to public health, they are subject to the control of the municipality in
 
 *312
 
 which they are situated. It is for the municipality, within reasonable bounds, to determine how they shall be collected and removed, or rendered harmless. Where it appears that the officers of a municipality act in good faith and in a reasonable manner, in enacting ordinances to preserve the public health, their action should be upheld by the courts even if its result is somewhat arbitrary in particular cases.
 

 The validity of a statute or ordinance is not to be determined from its effect in a particular case, but upon its general purpose and its efficiency to effect that end. When a statute is obviously intended to provide for the safety of a community and an ordinance under it is reasonable and in compliance with its purpose, both the •statute and the ordinance are lawful and must be sustained.
 
 (City of Rochester
 
 v.
 
 West,
 
 164 N. Y. 510.) The ordinance of the plaintiff is not unreasonable.
 

 All of the garbage, bones and kitchen refuse collected by the defendant had been discarded as human food. The specific things collected by the defendant and mentioned in the ordinance, are wholly worthless except as they have a nominal value when removed to some point without the city limits where they can with safety to the public health be fed to hogs. If they are not an existing menace to the public health when first placed in the receptacles provided for them, they must necessarily soon become such. Whether they become an existing menace to public health depends upon the care with which they are kept in the receptacles in which they are placed and in the frequency with which the contents of such receptacles are removed without the boundaries of the municipality and away from human habitation. The city is not required in a case where, danger is constantly to be apprehended to wait until a nuisance actually exists before taking action to safeguard the public health. The duty of the city includes such supervision and direction as will prevent the danger to public health, which
 
 *313
 
 will necessarily and surely arise if the 'things mentioned in the ordinance are not only properly cared for, but promptly removed. The specific things mentioned which are so discarded for human food and for all use within the municipality, demand constant vigilance and oversight on the part of the health department of the municipality. Experience has shown that when there are many collectors of garbage within a municipality acting independently although under license, it is difficult to maintain the supervision necessary to preserve the public health; while, with one contractor acting under a contract pursuant to which he is paid and for the faithful performance of which he is required to give a bond with sureties, the public health can be and is better and more surely protected. It will be observed that there is nothing in the ordinance now under consideration to prevent the owner of a restaurant or hotel from removing the garbage, bones and kitchen refuse on his property to a place where it will not be a nuisance to the public health, there to be fed to hogs or otherwise disposed of in such manner as to such owner may seem desirable.
 

 The ordinance relates solely to scavengers and collectors of garbage. The proprietors of restaurants and hotels from whose places of business the defendant collects the garbage, bones and table refuse, are not parties to this action. Their nominal property is not taken without compensation. Their compensation rests in the general good to the municipality. If the defendant is allowed to collect garbage, bones and kitchen refuse from seven places in the city, any other person can collect from seven other places and so the number may be increased indefinitely without the municipality having any means of controlling or supervising a work which concededly is one of great public concern.
 

 Ordinances regulating the removal and disposition of garbage, bones and kitchen refuse have frequently been sustained by state and federal courts. The late Judge
 
 *314
 
 Dillon in his work on Municipal Corporations (Fifth edition, section 678), referring to decisions of the courts, says: “Garbage matter and refuse are regarded by the decisions as inherently of such a nature as to be either actual or potential nuisances. By reason of the inherent nature of the substance, it is, therefore, not a valid objection to an ordinance requiring disposal in a specified manner that garbage has some value for purposes of disposal, and that the effect of the ordinance is to deprive the owner or householder of such value. That the owner suffers some loss by destruction or removal without compensation is justified by the fact that the loss is occasioned through the exercise of the police power of the state, and the loss sustained by the individual is presumed to be compensated in the common benefit secured to the public. Founded upon the foregoing considerations it is, therefore, within the power of the city hot only to impose reasonable restrictions and regulations upon the manner of removing garbage, but also, if it seems fit, to assume the exclusive control of the subject, and to provide that garbage and refuse matter shall only be removed by the officers of the city or by a contractor hired by the city, or by some single individual to whom an exclusive license is granted for the purpose. An exclusive right so created is not open to the objection that it is a monopoly.”
 

 The United States Supreme Court in
 
 Gardner
 
 v.
 
 Michigan
 
 (199 U. S. 325, 328, 330) had under consideration an ordinance of the city of Detroit which gave to a contractor with the city the exclusive right to collect and remove garbage which was “understood to consist of all refuse animal or vegetable matter, including dead animals, found within the city limits, coming from private or public premises within the city.” The defendant gathered and transported refuse from the tables of hotels of the kinds described in the statute as garbage, acting in such matter not for the city contractor, but
 
 *315
 
 for the person who bought such materials from the proprietors of the hotels. The court sustained, a conviction under the ordinance, and say: “It is manifest that, were individuals permitted to escape the regulation fixed by the common council and dispose of garbage as they severally saw fit, all system in the collection and removal of refuse matter would be destroyed. Even if this garbage have some value for some such use as that to which the respondent’s employer put it, the feeding of hogs, the courts will not, at the expense of the public health, recognize that this refuse matter, in its legal aspect, is property * * *. The court may well take judicial notice that table refuse when dumped into receptacles kept for that purpose will speedily ferment and emit noisome odors, calculated to affect the public health. If in providing against such a nuisance, the owner of such material suffers some' slight loss, the inconvenience or loss is presumed to be compensated in the common benefit secured by regulation. * * * The defendant insists that it is part of the common knowledge of the country that the refuse from kitchens, tables, hotels and restaurants is valuable as food for swine, and is property within the meaning of the constitutional provision which forbids the taking by any state of private property for public use without compensation. Of course, all know that such a use of refuse is not uncommon in some localities, although modern investigation shows that a good deal may be said against such a practice. * * * Touching the suggestion that garbage and refuse are valuable for the manufacture of merchantable grease and other products it is sufficient, in view of what we have said in the other case, to remark that it was a controlling obligation of the city, which it could not properly ignore, to protect the health of its people in all lawful ways having relation to that object; and if, in its judgment, fairly and reasonably exercised, the presence of garbage and refuse in the city, on the premises of householders and otherwise, would
 
 *316
 
 endanger the public health, by causing the spread of disease, then it could rightfully require such garbage and refuse to be removed and disposed of, even if it contained some elements of value.”
 

 The same court in
 
 California Reduction Co.
 
 v.
 
 Sanitary Reduction Works (199 U.
 
 S. 306, 318) approved the enforcement of an ordinance of the city and county of San Francisco pursuant to which a contract had been made with certain persons and their successors and assigns by which they were given the exclusive right and privilege to cremate and destroy garbage as therein defined, within said city and county for the period of fifty years, and charge therefor not exceeding twenty cents per load. The court say: “If a regulation, enacted by competent public authority avowedly for the protection of the public health, has a real, substantial relation to that object, the courts will not strike it down upon grounds merely of public policy or expediency. * * * It is not the province of the courts, except in clear cases, to interfere with the exercise of the power reposed by law in municipal corporations for the protection of local rights and the health and welfare of the people in the community.’ ”
 

 The appellant’s contention that the ordinance is unconstitutional because, as it alleges, it grants an exclusive privilege or franchise, has been sufficiently answered in what we have said herein. (See
 
 Gardner
 
 v.
 
 Michigan, supra; California Reduction Co. v. Sanitary Reduction Works, supra; Atlantic City
 
 v.
 
 Abbott,
 
 73 N. J. Law, 281;
 
 City of Grand Rapids
 
 v.
 
 De Vries,
 
 123 Mich. 570;
 
 Smiley
 
 v.
 
 MacDonald,
 
 42 Neb. 5.)
 

 The right to maintain an action to restrain violation of penal and other ordinances is expressly given to the plaintiff, as we have seen by its charter. Such right of action is concurrent with the legal action to recover for a violation of the ordinance. It is based upon the inadequacy as a remedy of successive actions following a series of violations. The equitable action is designed not only to
 
 *317
 
 prevent a multiplicity of legal actions, but to prevent a continuous injury to public health that might exist unabated while willful violations of the ordinance were continued.
 

 As equity has jurisdiction of the action to restrain the defendant from violating the ordinance he has no constitutional right to a trial of the issues by a jury. The constitutional provision relating to a trial by jury is “ The trial by jury in all cases in which it has been heretofore used shall be inviolate forever.” (Constitution State of New York, art. 1, sec. 2.) It had not been theretofore used in chancery.
 

 The judgment should be affirmed, with costs.
 

 Willard Bartlett, Oh. J., Hiscock, Cuddeback, Miller- and Cardozo, JJ., concur.
 

 Judgment affirmed.