[Criminal No. 513.   Filed November 16, 1921.]

[201 Pac. 847.]

# JOHN M. HADDAD and JOSE BIANES, Appellants, v. STATE, Respondent.

1. CARRIERS—INFORMATION FOR UNLAWFUL COMPETITION WITH STAGE ROUTE HELD GOOD.—Information against owner and driver of rent service automobile, charging violation of Corporation Commission's general order by carrying passengers over a stage route at less than 140 per cent of the scheduled stage fare, *held* not indefinite or uncertain as to the crime attempted to be charged, nor to contravene Penal Code of 1913, sections 934, 936, 943.

2. CRIMINAL LAW—STATUTE HELD NOT TO PUNISH TWICE FOR SAME OFFENSE.—Although Constitution, article 15, sections 16, 19, provide for punishment by penalty or fine for disobeying an order of the Corporation Commission, Laws 1919, chapter 130, section 8, authorizing punishment for such disobedience under a criminal prosecution, does not violate the guaranty of Constitution, article 2, section 10, that no one shall be punished twice for the same offense.

3. PUBLIC SERVICE COMMISSIONS—ORDER OF CORPORATION COMMISSION NOT VOID BECAUSE INCLUDING INDIVIDUALS AS WELL AS CORPORATIONS.—Though Constitution, article 15, was enacted to regulate "public service corporations" within the state, and not individuals *eo nomine,* an order, under Laws of 1919, chapter 130, of the Corporation Commission, affecting both corporations and individuals, *held* not void as including classes of persons not mentioned in such article.

4. CONSTITUTIONAL LAW—DELEGATION OF POWERS TO CORPORATION COMMISSION HELD CONSTITUTIONAL.—Even without the authorization given by Constitution, article 15, section 6, it would have been competent for the legislature to delegate power over automobile transportation to a special agency like the Corporation Commission; hence, chapter 130 of Laws of 1919, enlarging, in this respect, the

3.   Jurisdiction of Public Service Commission over carriers transporting by motor-trucks or busses, notes, 1 A. L. R. 1460; 9 A L. R. 1011.

State or municipal regulation of jitney busses, notes, Ann. Cas. 1916A, 1233; Ann. Cas. 1917C, 1051; Ann. Cas. 1918C, 946.

4.   Conferring on administrative board authority to determine qualifications of licensees as delegation of legislative power, note, 2 Ann. Cas. 427.

powers and extending the duties of the Corporation Commission, is warranted.

5. CARRIERS—CONSTITUTIONAL LAW—AUTOMOBILE TRANSPORTATION LAW HELD CONSTITUTIONAL. — Chapter 130, Laws of 1919, regulating automobile transportation, *held* to pertain to matters well within legislative cognizance, to aim at objects proper to be attained by the exercise of the police power, and not to constitute an unreasonable or palpable invasion of rights secured by Constitution of the United States, Amendment 14, or Constitution, article 2, section 4, providing that "No person shall be deprived of life, liberty or property without due process of law."

6. MONOPOLIES—STATUTES—AUTOMOBILE TRANSPORTATION ACT HELD NOT SPECIAL OR PARTIAL LEGISLATION.—Laws of 1919, chapter 130, regulating automobile transportation, *held* not special or partial legislation under Constitution, article 2, section 13, article 4, part 2, section 19; for the fact that, in granting the certificate of convenience and necessity for a stage route provided for in the act, the Corporation Commission may be obliged to select between two or more applicants, does not invalidate the law as monopolistic, class, discriminatory, or partial legislation.

7. CARRIERS—ORDER OF CORPORATION COMMISSION HELD NOT DISCRIMINATORY.—General Order 70A of the Corporation Commission, under Laws of 1919, chapter 130, the automobile transportation regulation law, providing that the fare for rent service on stage lines shall not be less than 140 per cent of the regular scheduled fare, does not conflict with Constitution, article 15, section 12, as requiring a discrimination for the same service.

8. CARRIERS—EVIDENCE THAT OWNER OF AUTOMOBILES TOLD DRIVERS TO COLLECT REGULARLY PRESCRIBED FARE ADMISSIBLE.—In prosecution of driver and owner of automobile, under Laws of 1919, chapter 130, for failure to collect the scheduled fare, where there was no evidence that the owner knew anything about the particular transaction or ever authorized the driver's act, other than might be presumed from his employment of the driver, exclusion of testimony of the owner that he told his drivers to charge the regularly prescribed fare for services rendered by his cars was error; the avowal not being insufficient in failing to exclude guilty knowledge by the owner of his servant's acts.

9. CARRIERS—THAT DRIVER OF AUTOMOBILE ACCEPTED UNLAWFUL FARE NOT SUFFICIENT TO SHOW OWNER'S ACQUIESCENCE.—In prosecution of a driver and owner of automobile, under Laws of 1919, chapter 130, for failure to collect the scheduled fare, where there was no evi-

---

7. Validity of statute conferring power on Public Service Commission to fix rates to be charged by a public utility, notes, 14 **Ann. Cas.** 614; **Ann. Cas.** 1917C, 57.

dence that the owner knew anything about the particular transaction or ever authorized the driver's act, other than might be presumed from his employment of the driver, *held*, that the mere fact that the driver accepted the unlawful fare, during the course of his employment, and within the scope thereof, was not in itself sufficient to show direction, knowledge, or acquiescence by the owner.

APPEAL from a judgment of the Superior Court of the County of Greenlee. Frank B. Laine, Judge. Affirmed as to Appellant Bianes, and reversed, with directions, as to Appellant Haddad.

Mr. L. Kearney, for Appellants.

Mr. W. J. Galbraith, Attorney General, Mr. O. E. Schupp, Special Assistant Attorney General, and Mr. George R. Hill, Assistant Attorney General, for the State.

FLANIGAN, J.—This is an appeal from a judgment convicting appellants (jointly informed against) of violating an order of the Arizona Corporation Commission made pursuant to chapter 130, Acts of the Fourth Legislature, Session Laws of 1919. This act is entitled:

"An act providing for the supervision, regulation and conduct of the transportation of persons, freight and property for compensation over the public highways of the state of Arizona by automobiles, jitney busses, auto-trucks, stages and auto-stages."

And it provides a somewhat comprehensive scheme to regulate intrastate transportation of freight and passengers, by the vehicles mentioned, as common carriers for hire, under the regulatory and supervisory powers in such act conferred upon the commission. The broad extent of the powers thus granted is well exemplified by section 5 thereof:

"The Corporation Commission of the state of Arizona is hereby authorized and empowered to su-

pervise and regulate every transportation company, person, firm or association, in this state engaged in transportation mentioned in this act; to fix the rates, fares, charges, classifications, rules and regulations of each such transportation company, firm or association operating under the terms of this act; to regulate the service and safety of operation, to require the filing of annual and other reports and other data; to supervise and regulate all corporations, persons, firms or associations in all matters affecting the relationship between such corporation, persons, firms, or associations and the traveling and shipping public. The Corporation Commission, in the exercise of jurisdiction conferred upon it by the Constitution of this state and by this act, shall have power and authority to make orders and prescribe rules and regulations affecting all transportation mentioned in this act, notwithstanding the provisions of any ordinance or permit of any incorporated city or town, and in case of conflict between any such order, rule or regulations, and any such ordinance or permit, the order, rule or regulation of the Corporation Commission shall in each instance prevail.''

Section 3 enacts that none of the vehicles mentioned shall be operated as common carriers for hire between fixed termini unless the operator shall have first made application for and procured from the Commission what in the act is designated a ''certificate of convenience and necessity.'' Of the hearing upon this application three days' notice is required to be given. The application is required to set forth (amongst other matters) the proposed time schedule, and a schedule of tariffs showing the passenger fares, or freight rates, to be charged between the several points, or localities, to be served.

Paragraph 5 of section 3 makes these provisions for the hearing on the application:

''(d) At the time specified for said hearing or at such later time as the same may be fixed by the Corporation Commission, a hearing upon said application

shall be held by the Corporation Commission. After such hearing the Corporation Commission may issue a certificate of convenience and necessity as prayed for or refuse to issue the same, or may issue the same with modifications, and upon such terms and conditions as in its judgment the public convenience and necessity may require. No certificate of convenience and necessity shall issue until the Corporation Commission shall find that the public convenience and necessity requires the issuance of the same.

"(e) Each certificate of convenience and necessity issued under the provisions of this act shall contain the following matters:

"1. The name of the grantee.

"2. The public highway, streets or highways over which, and the fixed termini between which, the grantee is permitted to operate.

"3. The kind of transportation, whether passenger or freight, in which the grantee is permitted to engage, together with a statement of the number and of the maximum seating or tonnage capacity of the vehicle which the grantee is permitted to operate.

"4. The term for which the permit is granted, which term shall not exceed ten years.

"5. Such additional provisions and limitations as the Corporation Commission shall deem necessary or proper to be inserted in the permit.

"No certificate of convenience and necessity issued under the provisions of this act may be assigned or transferred without an order of the Corporation Commission authorizing such transfer."

Section 4 directly prohibits any transportation of freight or persons, for hire, by any of the vehicles mentioned, or by any "rent for hire car . . . over any road, street or public highway or between fixed termini, over which or between which" there is already a line in operation under a certificate of convenience and necessity, "until such . . . person . . . shall have secured permission from the Corporation Commission to so operate, and then only in strict ac-

cordance with such rules as the Commission may prescribe for such operation.''

Section 8 is as follows:

''Every officer, agent or employee of any corporation, and every other person who violates or fails to comply with or who procures, aids or abets in the violation. of any provision of this act, or who fails to obey, observe or comply with any order, decision, rule or regulation or requirement or any part or provision thereof of the Corporation Commission, or who procures, aids or abets any corporation or person in his failure to obey any order, decision, rule or regulation or any part of [or] provision thereof, is guilty of a misdemeanor and is punishable by a fine, not exceeding one thousand ($1,000.00) dollars, or imprisonment in the county jail not exceeding one year, or by both such fine and imprisonment.''

The information under which the appellants were convicted alleged that on or about December 21, 1920, they were operating an automobile as a ''rent for hire'' car, for the transportation of persons for compensation over the public highways of Greenlee county, Arizona, and that there was then and there between Clifton and Morenci, in said county, an automobile stage operated by Mountain Auto Company, under a certificate of convenience and necessity duly and regularly issued by the commission, according to fixed tariffs and schedule of service, as prescribed by said commission; that on the aforesaid day there was in full force and effect a certain order of the Commission known as General Order No. 70A, made on March 12, 1920, pursuant to the provisions of said chapter 130, which said order provided as follows:

''That the rate, or fare for rent service when performed between points from and to which a scheduled service is in effect shall not be less than 140 per centum of the rate of fare prescribed for such scheduled service; provided, further, that where three or more scheduled daily trips are made by stage lines,

operators of 'for hire' cars may render service at stage line rates after the time the last stage is scheduled to leave.''

It is then charged that on said day the defendants, before the last stage of said Mountain Auto Company was scheduled to leave Clifton, did carry certain persons as passengers in their said for hire car from Clifton to Morenci; that said Mountain Auto Company was then and there running on said day for the transportation of persons, in accordance with their schedule; that the said defendants, contrary to the order of the commission, did, for the transportation of the said passengers, take and accept from them as fare and compensation each the sum of one dollar, which fare was less than 140 per centum of the rate of fare prescribed for such scheduled service by the commission.

The information was demurred to on various grounds, mostly constitutional, and much the same objections were made to the introduction in evidence of General Order No. 70A. The rulings of the court sustaining the information and permitting the evidence are the basis of most of the errors assigned.

The information is attacked as being indefinite and uncertain as to the crime attempted to be charged. We do not think it is required, in order to state the offense charged, or the particular circumstances of it necessary to constitute a complete offense (sections 936, 943, Pen. Code), to include the particular circumstances of ''the rates of fare, the schedules, time of departure and arrival of stages, fixed tariffs and schedules of service, or the termini of the route'' of Mountain Auto Company, further than is stated in the information. Nor do we think that the information is subject to the objection that it does not state ''the acts constituting the offense in ordinary and concise language and in such a manner as to

enable a person of common understanding to know what is intended," in contravention of section 934, Penal Code.

From the testimony given at the trial it appears that the appellant Haddad was himself the holder of a permit from the Commission to operate "two service cars" in Clifton, Morenci, Metcalf, and vicinity, at schedule rates of four dollars per hour, and "140 per cent of stage line rates" when "operated over routes of regular stage lines." We do not deem that fact material to the inquiry, for the reason that appellants were not charged with violating the terms of such permit.

What we have to decide on this phase of the case is, in short, the jurisdiction of the commission, by General Order No. 70A, to compel all rent service car owners operating for hire between the termini of the stage line to exact fares for passenger transportation of the prescribed rate of 140 per cent of the stage line fare; such regular stage line fare being one dollar. The order complained of is general and applies to all operators of "rent for hire" cars not running on fixed schedule, whether under permit or not. As a necessary consequence, the appellants are entitled to raise any question which goes to the validity of the exercise of the powers of the commission, or the existence of the power itself, to grant certificates of convenience and necessity.

Appellants contend that, the right being reserved by the Constitution to the commission to punish for the infraction of an order of the commission, that chapter 130, in so far as it authorizes punishment under a criminal prosecution, violates the constitutional guaranty that no one shall be punished twice for the same offense.

Sections 16 and 19 of article 15, Constitution, are as follows:

"Section 16. If any public service corporation shall violate any of the rules, regulations, orders, or decisions of the Corporation Commission, such corporation shall forfeit and pay to the state not less than one hundred dollars nor more than five thousand dollars for each such violation, to be recovered before any court of competent jurisdiction."

"Section 19. The Corporation Commission shall have the power and authority to enforce its rules, regulations and orders by the imposition of such fines as it may deem just, within the limitations prescribed in section 16 of this article."

Before considering the objections thus made, we may observe that we do not think the sections of the Constitution quoted amount to an implied prohibition of the legislative action in section 8, chapter 130. The punitive provisions of section 8 have no tendency to defeat or frustrate the constitutional intent, but are rather in aid of its accomplishment. Being of that character they must be upheld. *Stevens* v. *Benson,* 50 Or. 269, 91 Pac. 577; *State* v. *Hooker,* 22 Okl. 712, 98 Pac. 964; *Reeves* v. *Anderson,* 13 Wash. 17, 42 Pac. 625–627.

No right vested or recognized by the Constitution is conditioned in its exercise by section 8, nor does that section extend the constitutional penalty to a class of cases not constitutionally mentioned. Cooley's Constitutional Limitations, 7th ed., p. 99.

"In creating a legislative department and conferring upon it the legislative power, the people must be understood to have conferred the full and complete power as it rests in and may be exercised by the sovereign power of any country, subject only to such restrictions as they may have seen fit to impose and to the limitations which are contained in the Constitution of the United States. The legislative department is not made a special agency for the exercise of specifically defined legislative powers, but is intrusted with the general authority to make laws at discretion." Id., p. 126.

23 Ariz.—8

The quoted sections of the Constitution merely provide for the recovery of a penalty in a civil proceeding for a civil wrong, while chapter 130 enacts that a disobedience of any order made pursuant to the terms of that law shall be a crime, and punishable as such. This does not violate the constitutional guarantee of section 10, article 2, Constitution, that no person shall "be twice put in jeopardy for the same offense." *Stout* v. *State ex rel. Caldwell,* 36 Okl. 744, Ann. Cas. 1916E, 858, 45 L. R. A. (N. S.) 884, 130 Pac. 553; 16 C. J. 235.

The contention we next consider is that, as article 15 of the Constitution was enacted to regulate "public service corporations" within the state, and not individuals *eo nomine,* General Order No. 70A is therefore void, because it includes classes of persons not mentioned in that article. Identically the same contention was made in *Van Dyke* v. *Geary* (D. C.), 218 Fed. 111, asserting the invalidity of our Public Service Corporation Act, so far as it included natural persons within the scope of the law; the constitutional language extending only to "public service corporations." The ruling in the case cited, as in the same case on appeal to the Supreme Court of the United States (see *Van Dyke* v. *Geary,* 244 U. S. 39, 61 L. Ed. 973, 37 Sup. Ct. Rep. 483), upheld the validity of the enactment as against the objection.

While the precise point is not urged, we think it important to observe that we have not failed to consider the fundamental proposition of law necessarily involved in sustaining the information, that the legislature did not exceed constitutional limitations by prescribing that the infraction of an order of the commission, made within the scope of the powers conferred, might be prosecuted as a crime. *United States* v. *Grimaud,* 220 U. S. 506, 55 L. Ed. 563, 31 Sup. Ct. Rep. 480.

That the occupation of common carriers on the public streets and highways is a proper subject matter for legislative regulation is well settled.

"When, therefore, one devotes his property to a use in which the public has an interest, he, in effect, grants to the public an interest in that use, and must submit to be controlled by the public for the common good, to the extent of the interest he has thus created." *Munn* v. *Illinois,* 94 U. S. 126, 24 L. Ed. 77.

See, also Elliott on Roads and Streets, 3d ed., § 526.

The employment of "hackmen and draymen whose places of business are in the public highway" was a proper subject for police regulation at common law. *Munn* v. *Illinois, supra.* And recent authority classes these and the like occupations with privileges exercisable only at the will of the sovereign.

"The right of a citizen to travel upon the highway and transport his property thereon, in the ordinary course of life and business, differs radically and obviously from that of one who makes the highway his place of business and uses it for private gain, in the running of a stage-coach or omnibus. The former is the usual and ordinary right of a citizen, a common right, a right common to all, while the latter is special, unusual, and extraordinary. As to the former, the extent of legislative power is that of regulation; but, as to the latter, its power is broader. The right may be wholly denied, or it may be permitted to some and denied to others, because of its extraordinary nature. This distinction, elementary and fundamental in character, is recognized by all the authorities:

" 'A distinction must be made between the general use, which all of the public are permitted to make of the street for ordinary purposes, and the special and peculiar use, which is made by classes of persons in the pursuit of their occupation or business, such as hackmen, drivers of express wagons, omnibuses, etc. Tiedeman on Municipal Corporations, § 299. The rule must be considered settled that no person can acquire the right to make a special or exceptional use of a public highway, not common to all citizens

of the state, except by grant from the sovereign power.' *Jersey City Gas Co.* v. *Dwight,* 29 N. J. Eq. 242; McQuillin, Municipal Corporations, 1620.'' *Ex parte Dickey,* 76 W. Va. 576, L. R. A. 1916F, 840, 85 S. E. 781, at p. 782.

See, also, *West* v. *City of Asbury Park,* 89 N. J. L. 402, 99 Atl. 190; *Ex parte Bogle* (Tex. Cr. App.), 179 S. W. 1193; *Gill* v. *City of Dallas* (Tex. Civ. App.), 209 S. W. 209.

Even without constitutional authorization, it would have been competent for the legislature to delegate power over the subject matter to a special agency like the Corporation Commission. 12 C. J. 847; *State* v. *Atlantic C. L. R. Co.,* 56 Fla. 617, 32 L. R. A. (N. S.) 639, 47 South. 969.

Section 6, article 15, of our Constitution, however, forecloses all question on this head:

''The law-making power may enlarge the powers and extend the duties of the Corporation Commission, and may prescribe rules and regulations to govern proceedings instituted by and before it; but, until. such rules and regulations are provided by law, the Commission may make rules and regulations to govern such proceedings.''

Under these provisions there can be no doubt that chapter 130, enlarging, as it does, the powers and extending the duties of the Corporation Commission, is so far fully warranted.

The control which, under the police power of the state, may be exercised over automobiles carrying persons or freight for hire over the public ways, has received consideration in many of the decided cases. As being a legitimate exercise of the police power of the state, whether exercised directly by the Legislature or by municipalities, or other governmental agencies under delegated powers, regulations of various kinds over automotive transportation on the public highways have been upheld. For illustrative

cases, see *P. U. Com.* v. *Garviloch,* 54 Utah, 406, 181 Pac. 272; *Memphis* v. *State ex rel. Ryals* (Tenn.) L. R. A. 1916B, 1151, 179 S. W. 631; *Memphis St. R. Co.* v. *Rapid Transit Co.,* 133 Tenn. 99, Ann. Cas. 1917C, 578, L. R. A. 1916B, 1143, 179 S. W. 635; *Farmers & Merchants' Co-op. Tel. Co.* v. *Boswell Tel. Co.,* 187 Ind. 371, 119 N. E. 513; *West* v. *City of Asbury Park,* 89 N. J. L. 402, 99 Atl. 190; *Ex parte Bogle* (Tex. Cr. App.), 179 S. W. 1193; *Winchester & S. R. Co.* v. *Commonwealth,* 106 Va. 264, 55 S. E. 692; *Ex parte Parr,* 82 Tex. Cr. 525, 200 S. W. 404.

Chapter 130 pertains to matters well within the legislative cognizance, and aims at objects which are proper to be attained by the exercise of the police power, and in no sense constitutes an unreasonable or palpable invasion of rights secured by the Fourteenth Amendment to the Constitution of the United States, or section 4, article 2, of our Constitution, which provides that "No person shall be deprived of life, liberty or property without due process of law." See, generally, 6 R. C. L. 224; Elliott on Roads & Streets, 3d ed., § 526; *Barbier* v. *Connolly,* 113 U. S. 27, 28 L. Ed. 925, 5 Sup. Ct. Rep. 357 (see, also, Rose's U. S. Notes).

We have reserved for specific consideration the questions raised by the attack upon the act and the order of the commission, on the ground that they are constitutive of special and partial legislation under the provisions of our Constitution hereinafter quoted.

Section 13 of article 2 of the Constitution reads:

"No law shall be enacted granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which, upon the same terms, shall not equally belong to all citizens or corporations."

It is provided in section 19, part 2, article 4, thereof, that—

"No local or special laws shall be enacted in any of the following cases, that is to say: . . .

"13. Granting to any corporation, association, or individual, any special or exclusive privileges, immunities, or franchises. . . .

"20. When a general law can be made applicable."

The prohibition against the enactment of a local or special law granting any exclusive privilege, franchise, or immunity is so far an implied recognition of the legislative power to make such grants under general laws. How far is the power thus recognized, controlled, or affected by the provisions of our Declaration of Rights set out in section 13, article 2, above quoted? Having in mind that the object of all such provisions is to secure equality of opportunity and right to all persons similarly situated (12 C. J. 1112), our investigation of the authorities leads us to the conclusion that we cannot disregard the implied recognition by the Constitution of the power of the law-making body, acting upon its own conception of wisdom and policy, to enact general laws which permit of the grant of franchises, privileges, and immunities, exclusive in character, when the public interest in the judgment of the legislature is thereby subserved, if under the terms of such laws all citizens or classes of citizens are afforded equal opportunity and right to receive such grants by original investment. We think that a law which provides a scheme for the grant of such privileges, which is fair and equal in its terms, should be upheld, and that—

"The constitutional mandate is satisfied if there be no manifest intent to discriminate in favor of a particular class of citizens to the exclusion of others similarly circumstanced." *State* v. *Richcreek,* 167 Ind. 217, 119 Am. St. Rep. 491, 10 Ann. Cas. 899; 5 L. R. A. (N. S.) 878, 879, 77 N. E. 1085; *Perkins* v. *Heert,* 158 N. Y. 306, 70 Am. St. Rep. 483, 43 L. R. A. 858, 53 N. E. 18.

"There are unquestionably cases in which the state may grant privileges to specified individuals without violating any constitutional principle, because, from the nature of the case, it is impossible they should be possessed and enjoyed by all; and if it is important that they should exist, the proper state authority must be left to select the grantees." Cooley's Constitutional Limitations, 7th ed., p. 564.

"The most common and obvious illustration of the valid grant of an exclusive privilege or monopoly is found in exclusive franchises granted in connection with public utilities, in which the franchise is not only granted for the promotion of the public interest but is also monopolistic in its nature." 12 C. J. 1115, and cases cited: *Farmers & Merchants' Co-op. Tel. Co.* v. *Boswell Tel. Co., supra.*

The fact that in granting the certificate of convenience and necessity the commission may be under a duty to select between two or more applicants does not invalidate the law as monopolistic, class, discriminatory, or partial legislation.

As was said in *People* v. *Board of Railroad Commissioners,* 4 App. Div. 259, 264, 38 N. Y. Supp. 528, at page 531, of a grant made by commissioners under the New York law, conferring like powers:

"It may sometimes happen, as in this case, that two companies apply for a certificate to construct a road between the same points, and it may be that such railroad commissioners can properly certify as to each that public convenience and necessity require the construction of its road, or it may be that they cannot conscientiously certify that public convenience and necessity require the construction of more than one road. It is a question that must be determined by someone, and the board of railroad commissioners is the only body or tribunal vested with authority to issue the certificate in question, and from necessity, therefore, it has jurisdiction to determine, in the case of conflicting applicants, whether certificates shall be issued to both or only to one, and, if only to one, which one."

See, also, *Chicago Motor Bus Co.* v. *Chicago State Co.,* 287 Ill. 320, 122 N. E. 477; *State Public Utilities Com.* v. *Bartonville Bus Line,* 290 Ill. 574, 125 N. E. 373.

Even were we to suppose the case to arise of two applicants for a certificate of convenience and necessity presenting, in all substantial requirements, identical qualifications to serve the public, the mere possibility of such an event arising cannot affect the validity of the act or the grant made under it.

"The validity of a statute or ordinance is not to be determined from its effect in a particular case, but upon its general purpose and its efficiency to effect that end. When a statute is obviously intended to provide for the safety of a community, and an ordinance under it is reasonable and in compliance with its purpose, both the statute and the ordinance are lawful, and must be sustained." *City of Rochester* v. *West,* 164 N. Y. 510, 79 Am. St. Rep 659, 53 L. R. A. 548, and cases cited, 58 N. E. 673; *City of Rochester* v. *Gutberlett,* 211 N. Y. 309, Ann. Cas. 1915C, 483, L. R. A. 1915D, 209, 105 N. E. 548.

In considering the validity of chapter 130, we cannot put out of view the ends to be attained and the means adopted to attain them. These are well set forth in the opinion in *Public Utilities Com.* v. *Garviloch,* 54 Utah, 406, 418, 181 Pac. 272, at page 277, from which we quote:

"Whenever a route is established, the person or corporation to whom a certificate is granted must operate the vehicle used at the times, in the manner, and for the prices designated in the certificate. The utility must be operated in good and in bad weather, and, if so specified, both day and night. If, therefore, anyone who owns an automobile may compete with the one who has obtained a certificate by soliciting passengers who wish to pass over the established route, then he may do that only in fair weather and at such hours or times when the travel is greatest,'

and may thus make it impossible for the one having the certificate to successfully carry on the business because of lack of patronage and insufficient remuneration for conducting the business. Public convenience may thus not only be greatly affected, but might be entirely destroyed instead of being subserved.''

See, also, *Farmers & Merchants' Co-op. Tel. Co.* v. *Boswell Tel. Co., supra.*

It is also urged that General Order No. 70A conflicts with the provisions of section 12, article 15, Constitution, which section is in the following language:

''All charges made for service rendered, or to be rendered, by public service corporations within this state shall be just and reasonable, and no discrimination in charges, service, or facilities shall be made between persons or places for rendering a like and contemporaneous service, except that the granting of free or reduced rate transportation may be authorized by law, or by the Corporation Commission, to the classes of persons described in the act of Congress approved February 11, 1887, entitled an act to regulate commerce, and the amendments thereto, as those to whom free or reduced rate transportation may be granted.''

—for the reason (as we read the brief) that a discrimination is made by the order for the same service when performed by Mountain Auto Company and when performed by appellants.

It is not contended that the fare allowed appellant Haddad of $1.40 was not a just and reasonable compensation for the service rendered; on the contrary, he insists that he had a legal right to collect the lesser sum of one dollar. So far as the alleged discrimination is concerned, it cannot with reason be said that a special service could not be made the basis of a special ''rate or fare'' by a general regulation applicable to the competitors of all stage lines in the state, as is done by the order; indeed, it seems to

us that the very discrimination prohibited by section 12 would be introduced by prescribing that those receiving the benefit of transportation at irregular times, by special conveyances, should pay no more for such services than others traveling on regular stages between the same termini.

We think that the control committed by chapter 130 to the Corporation Commission over the common carriers mentioned in the act, and the public highways of the state, is in no wise repugnant to the letter or spirit of section 12.

When the validity of any rule, regulation, or order of the commission made under chapter 130 is in question, the *criteria* to be applied are the reasonableness of the regulation, in itself, and whether it really effectuates any purpose for which the powers were conferred; the presumption being that the regulation is reasonable and valid. So tested, there is no showing in this case that General Order No. 70A is not an appropriate and lawful method of effectuating the objects of the act, or that it is unreasonable or unjust, and we must therefore pronounce it to be a valid regulation.

The evidence introduced went to prove that appellant Bianes, who accepted the fares from the passengers, was in control of the car as the driver thereof, and was as such the employee of the appellant Haddad, owner. There was no evidence that Haddad knew anything about this particular transaction, or that he ever authorized the act of Bianes, other than might be implied or presumed from his employment of Bianes. Upon this state of the testimony, Haddad was asked by his counsel to state what fares he told his driver to charge on trips between Clifton and Morenci. To this question objection was sustained by the court. It was then avowed by Haddad's counsel that if permitted to testify Haddad

would state that he told his drivers to charge the regularly prescribed fare for the services rendered by his cars. It is contended by the state, in support of the ruling of the court excluding the testimony, that the avowal was not sufficient because it failed to exclude guilty knowledge by Haddad of the act of his servant.

We think the evidence was improperly excluded under the rule announced in *Grant Bros. C. Co.* v. *United States,* 13 Ariz. 388, 395, 114 Pac. 955, that—

"The master . . . is not liable criminally for the unlawful acts of his agent or servant, though such unlawful act be committed in the master's business, unless such unlawful act was directed by him or knowingly assented to or acquiesced in."

And, in view of a possible new trial of appellant Haddad, we hold that the mere fact that Bianes accepted the unlawful fare during the course of his employment, and within the scope thereof, is not in itself sufficient to show such direction, knowledge, or acquiescence by Haddad. In so holding we do not mean to intimate that there may not be cases where such direction, knowledge, or acquiescence may not be legitimately inferred from the surrounding circumstances. We think, however, that this case does not exhibit such a control by Haddad over the acts of the servant Bianes as driver as would, under the testimony, establish the commission of an offense by Haddad.

In stating our conclusions upon this case, it must, of course, be understood that it is not our province to uphold or defeat legislation on any conception we may entertain of its wisdom or policy. That function is allocated under our system to another and co-ordinate branch of government, i. e., the law-making power. If valid enactments are to be changed, it must be by act of the legislature or the people, and not by this court.

Upon the whole case our conclusions are that chapter 130 aforesaid is not subject to the constitutional objections urged; that General Order No. 70A is a valid exercise of powers granted to the commission; that the information states an offense against the appellants; and that for the reasons stated in this opinion the judgment must be affirmed as to appellant Bianes, and reversed as to appellant Haddad, with instructions to the court below to grant him a new trial as prayed for by him.

ROSS, C. J., and McALISTER, J., concur.