629 P.2d 86

RURAL/METRO CORPORATION, an Arizona Corporation, Plaintiff-Appellee,

v.

ARIZONA CORPORATION COMMIS-SION, and Bud Tims, James Weeks and John Ahearn, in their capacities as members of said Commission, Defendants-Appellants.

No. 1 CA-CIV 5285.

Court of Appeals of Arizona, Division 1, Department B.

Dec. 30, 1980.

Rehearing Denied Feb. 4, 1981.

Review Granted Feb. 18, 1981.

Law Offices of Louis G. Jekel by Robert C. Howard, Jr., and Louis G. Jekel, Scottsdale, Ajamie, Fay & Webb by Richard E. Fay, Phoenix, for plaintiff-appellee.

Robert K. Corbin, Atty. Gen. by Thomas Prose, Asst. Atty. Gen., Phoenix, for defendants-appellants.

OPINION

HAIRE, Presiding Judge.

The ultimate issue presented on this appeal is whether Rural/Metro Corporation, a private corporation furnishing fire protection services, is subject to regulation by the Arizona Corporation Commission.

This litigation originated with the filing of a special action complaint in the Maricopa County Superior Court in which Rural/Metro sought an order prohibiting the appellant-Commission from regulating Rural/Metro in the operation of its business. After hearing oral argument, the trial judge entered its judgment granting the requested relief. The Commission has appealed from that judgment.

In its answer to the special action complaint, the Commission admitted Rural/Metro's allegations that it was a privately-owned corporation engaged in the business of providing fire protection services to property not protected by a municipal fire department or a fire district; that in conjunction with this business Rural/Metro contracts with subscribers at yearly rates for fire protection; that Rural/Metro charges non-subscribers for any work done in providing fire protection on an hourly basis; and, that in the past first aid services have also been rendered by Rural/Metro without charge.

By way of background information, the parties admit that in 1971 Rural/Metro sought and received from the Commission a certificate of public convenience and necessity for the purpose of providing fire protection services to certain areas of Arizona not protected by a municipal fire department. From the time of issuance of the certificate of public convenience and necessity until the entry of the judgment which is the subject of this appeal, Rural/Metro submitted itself to the authority of the Commission and has conducted its operations as a regulated monopoly pursuant to the protection afforded it by its certificate of public convenience and necessity.

On October 11, 1979, the Commission issued its decision no. 50329. In its decision the Commission concluded that:

"First aid calls and community service calls are not services which may be provided by Rural/Metro Corporation in its capacity as a public service corporation."

Rural/Metro's dissatisfaction with this provision in the decision provided the impetus for the present special action through which Rural/Metro seeks to escape from regulatory control of the Commission.[1]

The resolution of the Commission's right to regulate Rural/Metro in the operation of its fire protection service business requires a two-pronged inquiry. The first inquiry is whether Rural/Metro is a "public service corporation" within the definition provided by Article 15, § 2 of the Arizona Constitution.[2] In pertinent part that definition includes any "corporation . . . engaged in . . . furnishing water for . . . fire protection . . . purposes." As such, it would be subject to the Commission's constitutional rate-making and other regulatory powers, Ariz. Const. Art. 15, § 3, as well as to the Commission's statutorily conferred power to require certain corporations to obtain a certificate of public convenience and necessity as a prerequisite to engaging in the business of providing fire protection services. *See* A.R.S. § 40–281 A; *Williams v. Pipe Trades Industry Program of Arizona*, 100 Ariz. 14, 409 P.2d 720 (1966); *Haddad v. State*, 23 Ariz. 105, 201 P. 847 (1921). A determination that Rural/Metro is a corporation engaged in furnishing water for fire protection purposes within the meaning of Article 15, § 2, would end our inquiry and require a reversal of the judgment entered by the trial court.

If it is determined that Rural/Metro does not fall within the purview of Article 15, § 2, then a second line of inquiry becomes pertinent: Are the Commission's regulatory powers limited to those public service corporations specifically listed in Article 15, § 2, or may those regulatory powers be statutorily expanded so as to include other corporations within its regulatory scheme? If the Commission's regulatory powers may be statutorily expanded, then it is clear that by

---

**1.** Although argued in the trial court, the Commission does not raise on appeal the propriety of using a special action to question the Commission's jurisdiction over Rural/Metro.

**2.** Ariz.Const., Art. 15, § 2 provides:
"§ 2. 'Public service corporations' defined Section 2. All corporations other than municipal engaged in carrying persons or property for hire; or in furnishing gas, oil, or electricity for light, fuel, or power; or in furnishing water for irrigation, fire protec- tion, or other public purposes; or in furnishing, for profit, hot or cold air or steam for heating or cooling purposes; or engaged in collecting, transporting, treating, purifying and disposing of sewage through a system, for profit; or in transmitting messages or furnishing public telegraph or telephone service, and all corporations other than municipal, operating as common carriers, shall be deemed public service corporations."

enacting A.R.S. § 40–281 A, the legislature has given the Commission the power to regulate corporations, such as Rural/Metro, that are engaged in the furnishing of private fire protection service. This conclusion would likewise require that the trial court's judgment be reversed.

■ We first consider whether Rural/Metro is a corporation engaged in furnishing water for fire protection purposes so as to come within the purview of Article 15, § 2. Obviously, Rural/Metro *uses* water in furnishing its fire protection service to its customers. In presenting its arguments in the trial court, Rural/Metro admitted that although there are many fire-fighting chemicals and agents used in modern fire-fighting techniques, water is the most important compound used for that purpose by Rural/Metro. The essence of Rural/Metro's position, however, is that it furnishes a fire protection service to its customers—it does not furnish water. Rather, Rural/Metro views itself as the consumer of water furnished for fire protection purposes by someone else. Considered in this light, it is the water company furnishing water to Rural/Metro that is engaged in furnishing water for fire protection purposes within the meaning of the constitutional provision. In this connection, Rural/Metro emphasizes that it owns no dams or wells with pumps or pipe in the ground that leads to fire hydrants. in addition, Rural/Metro points out that firefighting is only a part of its fire protection service which includes fire inspections and other fire prevention services. Thus, Rural/Metro concludes, its use of water is merely incidental to the business of furnishing fire protection services to its customers and therefore no basis for regulation by the Commission exists. *See Arizo-*

*na Corporation Commission v. Continental Security Guards*, 103 Ariz. 410, 443 P.2d 406 (1968) (Armored car service does not constitute engaging in business as a common or contract carrier, subject to Commission regulation, but rather, the transportation involved is merely an incidental part of the protection service provided); *General Alarm, Inc. v. Underdown*, 76 Ariz. 235, 262 P.2d 671 (1953). (The transmission of messages by wire by a corporation furnishing a burglary, fire and emergency signal and alarm system did not make that corporation a common carrier within the meaning of the constitution because the transmission of messages was only incidental to the furnishing of protection).

We agree that Rural/Metro is not engaged in the furnishing of *water* for fire protection purposes within the meaning of Article 15, § 2 of the Constitution of Arizona. In this regard we note that the Attorney General of Arizona has arrived at this same conclusion in at least two prior opinions issued by that office.[3] Furthermore, to the extent that the provisions of Article 15, § 2, are ambiguous, the Arizona courts have given them a narrow construction so as to limit the extent of the Commission's regulatory power. *See Visco v. State*, 95 Ariz. 154, 388 P.2d 155 (1963); *General Alarm, Inc. v. Underdown, supra.*

■ The Commission recognizes the ambiguity inherent in Article 15, § 2 insofar as concerns the facts presented in this appeal. However, it argues that the legislature has interpreted Article 15, § 2 as including companies furnishing fire protection services by enacting the 1970 amendment to A.R.S. § 40–281 A.[4] It contends that this court should give weight to that legislative inter-

3. See Arizona Attorney General's Opinion No. 55–235, dated November 16, 1955, affirmed by subsequent opinion dated September 9, 1969. In Opinion No. 55–235, the Attorney General stated:

"The distinction this office draws is this: a company furnishing water for fire protection purposes will be a water company, and, as such, will ordinarily have dams or wells, storage facilities, distribution mains and fire hydrants; while a fire protection company furnishes a service, that is, fire fighting service, and, as an incident to this service, may or may not use water. It would appear that a fire protection company would be a customer of a company furnishing water for fire protection."

4. The 1970 amendment to A.R.S. § 40–281 A added private fire protection service corporations to the list of corporations required to obtain a certificate of public convenience and necessity from the Commission prior to engaging in that business.

pretation. No authority is cited for this proposition, and we reject it. It is the duty of the courts, not the legislature, to interpret and construe ambiguous constitutional provisions. The validity of the legislature's attempt to expand the scope of the Commission's regulatory power by amending § 40–281 A is dependent upon whether that enactment constituted a valid exercise of legislative authority. The legislature cannot extend the scope of Article 15, § 2, by simply enacting a statute that "interprets" it.

■ Having concluded that Article 15, § 2 does not give authority to the Commission to regulate corporations furnishing private fire protection services, we now consider whether the 1970 amendment to A.R.S. § 40–281 A constitutes a valid legislative enactment, that is, may the legislature expand the Commission's jurisdiction so as to give "public service" designation to businesses not specifically mentioned in Article 15, § 2 of the constitution.

In considering that question, we note that Article 15, § 6 of the constitution provides as follows:

"§ 6. Enlargement of powers by legislature; rules and regulations

Section 6. The law-making power may *enlarge the powers and extend the duties* of the Corporation Commission, and may prescribe rules and regulations to govern proceedings instituted by and before it; but, until such rules and regulations are provided by law, the Commission may make rules and regulations to govern such proceedings." (Emphasis added).

In an early opinion the Arizona Supreme Court had occasion to consider the question of the legislature's power to increase the powers and duties of the Commission. The court, recognizing the authority inherent in the legislature in the exercise of the police power of the state, held as follows:

"Even without constitutional authorization, it would have been competent for the legislature to delegate power over the subject matter to a special agency like the Corporation Commission 12 C.J. 847; *State v. Atlantic C.L.R. Co.*, 56 Fla. 617, 32 L.R.A. (N.S.) 639, 47 South. 969.

"Section 6, article 15, of our Constitution, however, forecloses all question on this head: [Sic].

'The law-making power may enlarge the powers and extend the duties of the Corporation Commission, and may prescribe rules and regulations to govern proceedings instituted by and before it; but, until such rules and regulations are provided by law, the Commission may make rules and regulations to govern such proceedings.' "

*Haddad v. State, supra,* 23 Ariz. at 116, 201 P. at 851.

*See also, Corporation Commission v. Pacific Greyhound Lines,* 54 Ariz. 159, 94 P.2d 443 (1939). Notwithstanding the inherent legislative authority recognized in the above decisions and the extremely broad language of Article 15, § 6, Rural/Metro contends that the holding in *Menderson v. City of Phoenix,* 51 Ariz. 280, 76 P.2d 321 (1938), precludes legislative extension of the Commission's jurisdiction so as to include corporations other than those listed in Article 15, § 2. We disagree with Rural/Metro's interpretation of *Menderson.*

In *Menderson,* the plaintiff, who held a certificate of public convenience and necessity from the Corporation Commission for the operation of a bus line, sought to enjoin the defendant municipality from operating a competing bus line. The question presented was whether the municipality could operate its bus line without first obtaining a certificate of public convenience and necessity from the Commission. In considering the provisions of Article 15, § 2, the court stated:

"It will be seen thereby that all corporations which are engaged in carrying passengers for hire, and all corporations operating as common carriers, are deemed public service corporations within the meaning of the Constitution, *with the express and specific exception of municipal corporations.* We think that no plainer language could have been used by the makers of the Constitution to state that the constitutional powers conferred upon

the Corporation Commission, in regard to the government and regulation of public utilities, were not intended to, and did not, include those owned and operated by municipal corporations of any character. Indeed, while plaintiff presents an argument which might well have been addressed to the discretion of the Constitutional Convention, pointing out the terrible consequences which he believes will result to the public in case the Corporation Commission is not allowed to regulate municipal corporations operating public utilities, his contention that such constitutional power does exist is not very strenuous. We think it too clear for extended discussion that the Constitution not only does not expressly authorize the Corporation Commission to regulate municipal corporations which are operating public utilities, but that it, by necessary implication, forbids such regulation." (Emphasis in original). 51 Ariz. at 283, 76 P.2d at 322.

After concluding that the express and specific exception of municipal corporations in Article 15, § 2, constituted, by necessary implication, the forbidding of such regulation, the court then proceeded to consider whether such power might to statutorily granted to the Commission under the general authority granted to the legislature by Article 15, § 6. The court stated:

"The reasonable and natural construction of section 6, *supra*, is not that the legislature may enlarge the jurisdiction granted by the Constitution to the Corporation Commission to include subject matter *obviously intended to be excluded from such jurisdiction*, but that it may enlarge or extend the powers and duties of the commission over the subject matter of which it has already been given jurisdiction, and other matters of the same class, not expressly or impliedly exempt by other provisions of the Constitution. Such a construction of section 6, *supra*, is in harmony with our general scheme of government and with all other provisions of the Constitution. The construction contended for by plaintiff would outrage both." (Emphasis added). 51 Ariz. at 285, 76 P.2d at 323.

It is apparent from the foregoing that *Menderson* does not stand for the broad proposition that the legislature is completely prohibited from statutorily extending the jurisdiction of the Commission. Rather, *Menderson* stands for the much narrower proposition that the legislature may not enlarge the jurisdiction of the Commission so as to include subject matter expressly excluded by the language of the constitution itself.

Applying this principle to the case at hand, we find no language in Article 15, § 2, which impliedly or expressly prohibits the legislature from extending the powers and duties of the Commission so as to include corporations furnishing fire protection services. Nor can an argument be made that the listing of certain public service businesses in Article 15, § 2, constitutes an implied prohibition of future legislative inclusion of other businesses in that category. The provisions of Article 15, § 6, authorizing the rule-making authority to "enlarge the powers and extend the duties" of the Commission precludes such an argument. One of the many definitions given by Webster[5] for "enlarge" is to "increase in quantity". "Jurisdiction" and "authority" are listed as synonyms for the word "power". Thus, the legislature is clearly authorized to increase the jurisdiction of the Commission.

We therefore reject the trial court's conclusion that A.R.S. § 40–281 A in its regulation of fire protection service businesses is unconstitutional because it purportedly conflicts with Article 15, § 2 of the Arizona Constitution. In arriving at this conclusion we have not considered the question of whether Rural/Metro's fire protection service business is a "public calling" or a business affected with a "public interest" so as

5. Webster's Third New International Dictionary of the English Language Unabridged (P.B. Gove, ed. 1969).

to afford constitutional justification under the police power or other justifiable state interest for the intensive regulation normally associated with the regulated monopoly doctrine inherent in the provisions of A.R.S. § 40–281 A. *See generally, Visco v. State,* 95 Ariz. 154, 388 P.2d 155 (1964); *General Alarm, Inc. v. Underdown,* 76 Ariz. 235, 262 P.2d 671 (1953). This question was not presented in the trial court and the very limited factual record [6] presented to us on this appeal precludes further discussion in that regard.

The judgment entered in the trial court is reversed, and the matter is remanded for further proceedings consistent with this opinion.

JACOBSON and EUBANK, JJ., concur.

---

**6.** There was no evidentiary hearing in the trial court, and very few factual allegations were admitted by the Commission in its answer to Rural/Metro's special action complaint. Therefore, for the purpose of resolving the issue presented to us we have to some extent relied on uncontroverted factual statements made by both counsel in the presentation of their arguments, in the trial court and in this court.