## PUBLIC UTILITIES COMMISSION OF UTAH v. GARVILOCH.

No. 3350. Decided April 29, 1919. (181 Pac. 272.)

1. CARRIERS—"PUBLIC UTILITY"—WHAT ARE—SUPERVISION. In view of Comp. Laws 1917, section 4782, subds. 6, 13, 14, and 28, as well as section 4798, defendant, who operated an automobile for hire, carrying passengers over no designated route, and allowing them to select the designation, *held* to be operating a "public utility" within section 4818, and so falls within the jurisdiction of the Public Utilities Commission. (Page 412.)

2. CARRIERS—PUBLIC UTILITIES ACT—OPERATION OF AUTOMOBILE FOR HIRE. That defendant obtained a license from the secretary of state to operate an automobile, and was also granted a license by a town to carry passengers for hire, does not afford him any protection, where he operated utility contrary to the provisions of Public Utilities Act; and so, where defendant unlawfully interfered with a licensed automobile stage line, he is liable. (Page 414.)

3. CARRIERS—PUBLIC UTILITIES ACT—OPERATION OF AUTOMOBILE. The granting of a certificate of convenience and necessity by the Public Utilities Commission to the operator of an automobile stage line not only confers authority to operate the stage line, but, in view of Comp. Laws 1917, section 4840, relating to actions for damages by persons who may be injured by the acts or omissions of any public utility, such certificate affords protection to the holder against any one interfering with the right conferred, which is in the nature of a limited franchise. (Page 414.)

4. CARRIERS—PUBLIC UTILITIES ACT—INTERFERENCE—WHAT CONSTITUTES. Though defendant in the operation of his automobile for hire was operating a public utility, yet, as his business was practically that of a taxicab driver, and he had no established route, he will not be enjoined from carrying passengers to destinations at points served by an automobile stage line, having a certificate from the Public Utilities Commission. (Page 419.)

Appeal from District Court, Third District, Salt Lake County; *H. M. Stephens,* Judge.

Action by the Public Utilities Commission of Utah against Mike Garviloch. From a judgment for defendant, plaintiff appeals.

AFFIRMED.

*Dan B. Shields,* Atty. Gen., and *O. C. Dalby, Jas. H. Wolfe,* and *H. Van Dam, Jr.,* Asst. Attys. Gen., for appellant.

*Willard Hanson* and *B L. Liberman,* both of Salt Lake City, for respondents.

FRICK, J.

The Public Utilities Commission of Utah, hereinafter called commission, commenced this action in the district court of Salt Lake county to enjoin the defendant from operating a certain "automobile stage line." The commission, in its complaint, in substance alleged that on April 2, 1918, one Eugene Chandler made application to the commission for a "certificate of convenience and necessity," as required by the Utilities Act of this state, to operate "a stage line between Bingham Canyon and Highland Boy mine, and between Bingham Canyon and Copperfield in Salt Lake county"; that thereafter a public hearing was duly had on said application, and that said commission duly granted the said Chandler a certificate of convenience and necessity to "operate an automobile stage line for the transportation of passengers" between the places before stated, and that no other person or persons have been granted a certificate of convenience and necessity to operate a stage line or to carry passengers between said places; that "this defendant, Mike Garviloch, disregarding the order so made by the Utilities Commission, has undertaken to operate and is now engaged in the operation of an automobile stage line and to carry passengers for hire over said routes as established by the said order of the Utilities Commission, to wit, between Bingham Canyon and Highland Boy mine and between Bingham Canyon and Copperfield, without having received from the said commission a certificate of convenience and necessity, or without authorization from such commission so to do, and in violation of the terms of chapter 47 Laws Utah 1917, commonly known as the Utilities Act;" that defendant, after being repeatedly requested to refrain from operating said stage line, refuses to do so, and continues to operate the same; that the commission has no speedy or adequate remedy at law, and therefore prays that the defendant be enjoined from operating said stage line, etc.

The defendant appeared and filed a general demurrer to the complaint. The demurrer was overruled, and the defendant filed his answer to the complaint, in which he admitted the capacity of the commission, etc., and in effect denied all other allegations of the complaint. As an affirmative defense he averred:

"And further answering said complaint as a defense thereto, this defendant says that he is the owner of a certain automobile, which car has been duly licensed by the state of Utah as a commercial car; that the town of Bingham Canyon is a duly incorporated municipality of the state of Utah, and on the twelfth day of July, A. D. 1918, said town of Bingham Canyon, through its proper officers, duly issued to this defendant a certain license, which license was then and there required by said town of Bingham Canyon for all persons operating an automobile for hire in and around said town, and the said license was duly issued to this defendant by virtue of the ordinance aforesaid, and duly authorized this defendant to operate an automobile for hire from the said first day of July, A. D. 1918, to the thirty-first day of December, A. D. 1918; and that at the expiration of said license there was duly issued to this defendant another license from the first day of January, A. D. 1919, to the thirty-first day of March, A. D. 1919, authorizing and permitting this defendant to operate a certain automobile for hire;" that he has operated and continues to operate said automobile for hire by virtue of the licenses aforesaid; "that in and around said town of Bingham Canyon are numerous mines and also a number of towns, and that occasionally he has been employed for hire by divers and sundry persons to make trips to cities and towns, including trips to Salt Lake City, Garfield, Lark, Midvale, Riverton, Revere Switch, Phoenix, Highland Boy mine, Frisco mine, Copperfield, United States mine, the Boston Consolidated mine, and various and sundry trips around the town of Bingham Canyon and to other places as might be desired by persons desiring to employ defendant to carry them as passengers in said automobile aforesaid;" that he has made no trips between the points mentioned in the complaint "upon any schedule, or attempted to run between said points, except an occasional run not in competition with any person or corporation operating between said points, * * * but has made a few occasional trips between said points when hired to do so by persons who requested the services of this defendant."

A hearing before the district court upon an agreed statement of facts resulted in a judgment dismissing the action, from which the commission appeals and insists that the district court erred in refusing to enjoin defendant and in dismissing the action.

The defendant contended in the district court, and now contends, that the provisions of the Utilities Act do not cover the acts complained of, and do not affect him in the conduct of the business which he is carrying on as described in his an-

swer and in the stipulation of facts upon which the judgment is based.

The facts stipulated are very voluminous, and, in view of the issues presented by the pleadings, they are, in many respects, redundant and wholly immaterial. After finding that the commission had duly issued to Eugene Chandler a certificate of convenience and necessity to operate an automobile stage line over the route in question and that he is operating the same in accordance with and pursuant to the direction of the commission, the only material facts under the issues are contained in six out of the thirty-four paragraphs contained in the stipulation. While the facts stated in the six paragraphs, in our judgment, could still be further condensed, yet, in view of the contentions of the parties, we have deemed it but fair to state the facts stipulated in the language of the parties. They are as follows:

"(22)    That he [defendant] has since the first day of October aforesaid, and up and until he was restrained by order of this court, to wit, the eleventh day of January, A. D. 1919, carried passengers as follows:    That he has carried passengers for hire in said automobile from Phœnix and also from Highland Boy mine over said highways to the said Denver and Rio Grande Depot in Bingham; that he has likewise carried passengers in said automobile from the said depot to different points in the said town of Bingham, and likewise to the said town of Copperfield and to the said town of Phœnix and to the said Highland Boy mine.

"(23)    That he has also carried passengers for hire in said automobile during the said time hereinbefore referred to, over the said highways from the said towns of Phœnix, Bingham, Copperfield, and from the said Highland Boy mine to Salt Lake City, Midvale, Murray, Garfield, and Lark, and to such other places as he might be hired to carry passengers by those wishing to be carried by the defendant, and as he, defendant, might elect to accept said persons as passengers; and that he has likewise carried passengers to and from various points in and around Bingham, such as the United States mine, which is on said highway in the main canyon, and is beyond the town of Copperfield; and to and from the Boston Consolidated mine and other places in said Carr Fork canyon which are beyond said Highland Boy mine.

(24)    That he has at times during the period set forth herein, to wit, from October A. D. 1918, until January 11, 1919, by permission of the officers of Bingham, and by virtue of said license issued by said town, maintained a place in Bingham near where said

Carr Fork branches off from the said main canyon aforesaid, and near the place where the said Eugene Chandler has his stand or place where he maintains his automobiles as aforesaid, and at the said point this defendant during said time received persons whom he carried for hire in said automobile over said highway to the town of Phœnix and to said Highland Boy mine, and also at said place in Bingham he has received persons that he has carried for hire in said automobile over said highway to the town of Copperfield; and that he has likewise during the said period received persons as passengers in the said town of Phœnix, and at Highland Boy mine and in the said town of Copperfield, which he has carried as passengers for hire in said automobile over said highway aforesaid, and discharged the said persons as such passengers at the place in Bingham where he maintains said stand as aforesaid.

"(25)    That he has, during said period, and up to the time when he was restrained by order of said court, made from 5 to 15 trips per week between the said place or stand in Bingham where he maintained his car as aforesaid and the said town of Copperfield, Phœnix, and the said Highland Boy mine aforesaid.

"(26)    That all of said persons so carried, as set forth in paragraphs numbered twenty-four and twenty-five, were carried at the request of the passengers, and upon no regular schedule or schedules, nor upon any regular rate of fare; that is to say, that whenever persons, desiring to become passengers between said points as aforesaid, requested this defendant to transport them in said automobile and this defendant agreed to accept said persons as passengers, then this defendant charged such sum from such persons as he, defendant, thought the trips might be worth under varying conditions.

"(27)    That if said trips were made in stormy or inclement weather the charges would be more than if made in fair weather. That if one person desired to be conveyed in said automobile as aforesaid, this defendant would charge the said person at least one dollar, and possibly as much as two dollars, to transport him to any of the said places, to wit, from the said place in Bingham to Copperfield, Phœnix, or Highland Boy mine, and that if a number of persons applied at the same time, he, this defendant, might make said persons a rate less than a dollar, according to the number desiring to be hauled as passengers as aforesaid."

Defendant relies upon Comp. Laws Utah 1917, section 4818, which, so far as material here, provides:

"No  *  *  *  automobile corporation,  *  *  *  shall henceforth establish or begin the construction or operation of a  *  *  *  line, route, plant, or system, without having first obtained from the commission a certificate that the present or future public convenience

and necessity require or will require such construction.  *  *  *"

Defendant insists that the provisions of the foregoing section apply only to those who intend to construct "a line, route, plant, or system," etc.  The district court held against the defendant's contention.  In passing on the question the district court filed a written opinion, of which we adopt the following and make it a part of this opinion, namely:

"It is contended by defendant that the omission to say 'operation or construction' at the close of the clause above indicates, if taken in connection with the balance of the section, which relates in terms largely to 'construction,' that the section applies only to the 'construction' of automobile lines, and not to their 'operation,' and that the word 'operation,' where used, is superfluous to the substantial meaning of the section as a whole.  It is, of course, elementary in statutory construction that a word may be disregarded or eliminated, if its presence makes the clause in which it occurs unintelligible.  Lewis' Sutherland on Statutory Construction (2d Ed.) vol. 2, section 384.  It is also true, however, that words may be supplied if necessary to give effect to the intention of the Legislature, if that intention be ascertained with reasonable certainty.  Section 382 of the author just quoted.  Reading the statute as a whole, and particularly reading section 4818 with section 4782, subdivision 13, defining 'automobile corporation,' and bearing in mind that as a matter of common knowledge automobile carriers 'operate' without 'construction,' the court concludes that the insertion of 'or operation,' at the end of the clause above quoted from section 4818, would more correctly give effect to the legislative intent than the elimination of the words 'or operation' after the first word 'construction' in the same section.  It seems to be the plain purpose of the statute as a whole to regulate all public utilities, including 'automobile corporations' (as therein defined), both as to 'construction' and 'operation.'  To strike the phrase 'or operation,' just referred to, would markedly restrict the power of the commission respecting utilities in general.  (And it is not to be inferred that all other utilities are to be controlled by the commission, both with respect to 'operation' and 'construction,' but that 'automobile corporations' are to be controlled merely with respect to 'construction,' an activity in which 'automobile corporations' almost never indulge.  Such an interpretation of the statute would be unreasonable.)"

There are, however, other provisions of the Utilities Act which make it clearer still that the defendant's automobile is

within the jurisdiction of the commission. Comp. Laws Utah 1917, section 4782, subds. 6, 13, 14, and 28, which are a part of the original Utilities Act, read as follows:

"6. The term 'transportation of persons,' when used in this title, includes every service in connection with or incidental to the safety, comfort, or convenience of the person transported and the receipt, carriage, and delivery of such person and his baggage."

"13. The term 'automobile corporation,' when used in this title, includes every corporation or person, their lessees, trustees, receivers or trustees appointed by any court whatsoever, engaged in, or transacting the business of, transporting passengers or freight, merchandise or other property for compensation, by means of automobiles or motor stages on public streets, roads or highways along established routes within this state.

"14. The term 'common carrier,' when used in this title, includes * * * automobile corporation; * ·* * and every corporation or person, their lessees, trustees, receivers, or trustees appointed by any court whatsoever engaged in the transportation of persons or property for public service, over regular routes between points within this state."

"28. The term 'public utility,' when used in this title, includes every * * * automobile corporation * * * where the service is performed for or the commodity delivered to the public or any portion thereof. The term 'public or any portion thereof,' as herein used, means the public generally, or any limited portion of the public, including a person, private corporation, municipality, or other political subdivision of the state, to which the service is performed or to which the commodity is delivered, and whenever any * * * automobile corporation * * * performs a service or delivers a commodity to the public or any portion thereof for which any compensation or payment whatsoever is received, such * * * automobile corporation * * * is hereby declared to be a public utility subject to the jurisdiction and regulation of the commission and the provisions of this title. * * * Any corporation or person not being engaged in business exclusively as a 'public utility,' as hereinbefore defined, shall be governed by the provisions of this title in respect only of the 'public utility' or 'public utilities' owned, controlled, operated, or managed by it or by him, and not in any respect of any other business or pursuit."

Section 4798 provides:

"The commission is hereby vested with power and jurisdiction to supervise and regulate every public utility in this state, as defined in this title, and to supervise all of the business of every such public utility in this state, and to do all things, whether herein

specifically designated, or in addition thereto, which are necessary or convenient in the exercise of such power and jurisdiction."

After considering all of the foregoing provisions together, as we must, there remains little, if any, room for controversy respecting the jurisdiction of the commission over all public utilities or what, within the purview of the act, constitutes a public utility.

Under the stipulated facts, therefore, the defendant and Eugene Chandler are each engaged in operating a public utility.

Defendant contends, however, that the act applies and the jurisdiction of the commission extends only to such utilities as are operated on public streets, roads, or highways along established routes, as provided in the act. He insists that the license he obtained from the secretary of state under the general law and the one issued to him by the town of Bingham Canyon give him ample authority to operate his automobile for hire over public streets and highways as it is stipulated he is doing. He insists that he is not operating his automobile on or along an established route, nor over a regular route as contemplated by the act. We remark that neither the license issued by the secretary of state nor the one obtained from the town of Bingham Canyon gives the defendant the right to operate a public utility nor affords him any protection if he is operating such utility contrary to the provisions of the Utilities Act. See *Puget Sound T., L. & P. Co.* v. *Grassmeyer* (Wash.) 173 Pac. 504, L. R. A. 1918F, 469. The commission has the exclusive jurisdiction over and power to regulate all public utilities defined in the act. Whenever any person or corporation desires to operate a public utility    2, 3 within this state over a public street or highway, and over what is designated as an established route, he or it, before doing so, is required to obtain from the commission what in the act is called a certificate of convenience and necessity. Such a certificate is in the nature of a limited franchise, and authorizes the grantee in the certificate to operate a utility over the designated routes and likewise protects him against interference by others unless authorized by the commission.

In *City of Memphis* v. *State ex rel. Ryals*, 133 Tenn. 83, 179 S. W. 631, L. R. A. 1916B, 1151, Ann. Cas. 1917C, 1056, P. U. R. 1916A, 825, in speaking of the power to regulate public utilities on public roads or highways, the court, in the course of the opinion, said:

"It is too clear for extended discussion that it was competent for the Legislature, under the police power, to regulate the use of streets and public places by jitney operators, who, as common carriers, have no vested right to use the same without complying with a requirement as to obtaining a permit or license. *The right to make such use is a franchise* to be withheld or granted as the Legislature may see fit." (Italics ours.)

As bearing upon the proposition just stated, see, also, *State* v. *Mayo*, 106 Me. 62, 75 Atl. 295, 26 L. R. A. (N. S.) 502, 20 Ann. Cas. 512; *Commonwealth* v. *Kingsbury*, 199 Mass. 542, 85 N. E. 848, L. R. A. 1915E, 264, 127 Am. St. Rep. 513; *Petition of Gray*, P. U. R. 1916A, 33. The granting of a certificate of convenience and necessity by the commission to Chandler, therefore, was in the nature of a limited franchise which authorized him to operate his automobile stage line over the route designated in the certificate for the time and under the conditions therein specified. The certificate, therefore, not only confers authority to operate the stage line, but it necessarily also affords him protection against any one who unlawfully interferes with the right thereby conferred. If such is not the legal effect of the certificate, then the operation of utilities may easily become detrimental rather than beneficial to the public and thus result in a farce. To obviate such a result is, in our judgment, clearly contemplated by the act itself. Comp. Laws Utah 1917, section 4840, provides for actions for damages by all persons who may be injured in any respect by the acts or omissions of any public utility. This necessarily includes damages for the unlawful interference by one public utility with the rights and franchises of another public utility. That proposition is clearly illustrated in *Puget Sound, etc., Co.* v. *Grassmeyer*, supra.

In addition to the foregoing, however, ample power is also conferred on the commission to bring actions in the courts to

enforce its orders and to punish violations of the Utilities Act.

There is, therefore, no doubt concerning the jurisdiction of the commission over the defendant and over the business he is conducting, nor concerning the question that, if he is unlawfully interfering with the rights granted to Eugene Chandler under the certificate of convenience and necessity issued by the commission, the court, upon the application of the commission, if such interference be established, not only has the power to prevent such interference by injunctive relief, but, in such case, it would be its duty to do so. The question, therefore, is whether, under the issues presented by the pleadings, and in view of the stipulated facts, the defendant has unlawfully interfered or is so interfering with Chandler's rights under the certificate of convenience and necessity issued to him.

It will be observed that all that is complained of in the complaint is that the defendant is operating a stage line, that is, a public utility, over an established route without having obtained permission to do so from the commission as required by the Utilities Act. The defendant denied the charge, and in his answer set forth in detail the nature or character of the business he is conducting, which he contends is not interfering with any established route, etc. He, however, also insists that in view that he is not operating his automobile over a route established by himself, and is not operating his car according to a fixed schedule and for a fixed charge for the service rendered, therefore his business is not subject to regulation by the commission. The contention, in our judgment, is not tenable to the full extent claimed by defendant.

The test, where the commisson has jurisdiction over a particular utility, is not whether the party complained of, as here, is operating an automobile or stage line for hire over a route upon a schedule or at a fixed rate of fare for the services rendered, but the test is whether he is in fact operating a public utility over a material portion or the whole of an established route over which another has theretofore obtained from the commission a certificate of convenience and necessity to oper-

ate a public utility. Much was said in the argument about
what constitutes an established route within the purview of
the act and how and by whom such a route may be estab-
lished. To our minds that question is not difficult of solution.
In this case the route, within the purview of the act, was
manifestly established over the public highway between the
points stated in the complaint and designated in the certifi-
cate of convenience and necessity issued to Chandler   No
doubt the defendant is not operating his automobile over a
route which was established upon his application as was the
Chandler route, but that is not controlling.   What he is
charged with is that he is operating a public utility over a
route established by the commission upon the application or
petition of Chandler, and over which route Chandler has
been granted a certificate of convenience and necessity to op-
erate a public utility for the benefit of himself and the pub-
lic.   If, therefore, the defendant is operating his automobile
over Chandler's route, or over a substantial part of it, in op-
position to or in competition with Chandler, then, in our judg-
ment, the defendant is doing so in violation of the Utilities
Act.   If he solicits passengers at or near the Chandler route
from among those who but for his solicitations would use the
utility operated by Chandler, and transports them over the
route designated in the certificate issued to Chandler, then he
is doing so in violation of Chandler's rights, granted to him
by the certificate.   If, however, as contended by his counsel,
defendant is not soliciting passengers, as before stated, and is
only transporting those who specially apply to him for trans-
portation from points which have no connection with the
points on the route operated by Chandler, or if he is hired by
one or more persons to carry him or them from a point out-
side of Chandler's route to a point on Chandler's route for a
price agreed upon between such persons and the defendant
for the services rendered, and the persons hiring his auto-
mobile may direct when and where it shall go, then he is not
violating the provisions of the Utilities Act.   In other words,
if the defendant is merely carrying on a so-called hack or
taxicab business upon request from those who may desire to

be carried[1] in a special conveyance which is under their direction and control for the time for which it is hired and at a price agreed upon for the services, then he is not operating on or over an established route within the purview of the act, and is not subject to regulation as though he were operating such a route.   The proposition just stated is well illustrated in the case of *Terminal Taxicab Co.* v. *District of Columbia,* 241 U. S. 252, 36 Sup. Ct. 583, 60 L. Ed. 984, Ann. Cas. 1916D, 765, in which case, in the course of the opinion, it is said:

"It may be assumed that a person taking a taxicab at the station [railroad station] would control the whole vehicle both as to contents, direction, and time of use, although not, so far as indicated, in such a sense as to make the driver of the machine his servant according to familiar distinctions."

It is accordingly held in that case that a vehicle which is hired as just stated does not come within the rule applicable to those vehicles which are operated over regular or established routes.   To the same effect, see, also, *In re Ryder,* P. U. R. 1916B, 1067.   If, therefore, the defendant interferes with the established route by soliciting patronage, as hereinbefore illustrated, he may, nevertheless, be prohibited from so interfering.   Such, it seems to us, is manifestly the purpose of the act.   If such is not the case, regulation will accomplish nothing, and the public interests will not thereby be subserved. Whenever a route is established, the person or corporation to whom a certificate is granted must operate the vehicle used at the times, in the manner, and for the prices designated in the certificate.   The utility must be operated in good and in bad weather, and, if so specified, both day and night.   If therefore, any one who owns an automobile may compete with the one who has obtained a certificate by soliciting passengers who wish to pass over the established route, then he may do that only in fair weather and at such hours or times when the travel is greatest, and may thus make it impossible for the one having the certificate to successfully carry on the business because of lack of patronage and insufficient remuneration for conducting the business.   Public convenience may thus not only be greatly affected, but might be entirely destroyed instead of being subserved.   If the public is not properly served

by the one having obtained a certificate over an established route, any one in interest may complain, and the commission has full power to compel obedience to any orders it may make with respect to the matter. Moreover, if the person operating the route fails to give adequate service, any person may apply to the commission for a certificate to operate a utility over the same route upon such terms and conditions as may seem just and proper to the commission under all the circumstances. While in this case we are not as well satisfied as we might be that the defendant is not, to some extent at least, interfering with Chandler's business, yet, in view of the stipulated facts upon which the district court based its judgment, we cannot say that the interference is unlawful, or is such as to authorize this court to reverse the judgment or order what judgment should be entered different from the one that has been entered.

We have arrived at the foregoing conclusion with less reluctance for two reasons: (1) Because the principal purpose of bringing this action was to obtain a construction of the Utilities Act for the purpose of determining the respective rights of the commission and the holder of a certificate of convenience and necessity; and (2) for the reason that if Chandler's business is in fact unlawfully interfered with by the defendant, as stated by the Attorney General at the hearing, Chandler may, as before stated, institute an action on his own behalf, and recover such damages as he may prove, or he may obtain such other relief as may be just and equitable in the premises. He, not being a party to this action, is not bound by the stipulation of facts in this case, and hence may allege and prove the facts regarding defendant's operation of his automobile as they in fact exist, if indeed they materially differ from the agreed statement in this case.

For the reasons stated, the judgment is affirmed. Costs to the defendant.

CORFMAN, C. J., and WEBER, GIDEON, and THURMAN, JJ., concur.