## PUBLIC UTILITIES COMMISSION OF UTAH v. PULOS.

No. 4877.   Decided April 9, 1930.   (286 P. 947.)

*George P. Parker*, Attorney General, *Byron D. Anderson*, Assistant Attorney General, and *Sam D. Thurman*, of Salt Lake City, for appellant.

*Henry D. Moyle* and *J. M. Christensen*, both of Salt Lake City, for respondent.

ELIAS HANSEN, J.

This is a proceeding prosecuted by the public utilities commission of Utah to enjoin the defendant from transporting freight or merchandise for compensation between Salt Lake City, Utah, and the Uintah Basin, Utah. The commission filed the complaint against the defendant in the district court of Salt Lake county, Utah. Thereafter an amended complaint was filed. The amended complaint, omitting the title of the court and the cause, reads as follows:

"Comes now the plaintiff above named, and, upon the consent of defendant and by leave of court, files this, its amended complaint, and, for cause of action, alleges:

"1. That Elmer E. Corfman, Thomas E. McKay and George F. McConagle are the duly appointed, acting and qualified Public Utilities Commission of the State of Utah, and bring this action on behalf of the said State of Utah.

"2. That under and by virtue of the authority vested in and conferred upon the aforesaid Commissioners by Title 91, Compiled laws of Utah, 1917, and amendments thereto, said Commission is vested with power and jurisdiction to supervise and regulate all public

utilities and common carriers in the State of Utah, as defined in the aforesaid Title and amendments, and to supervise all of the business of every other public utility, and to hold hearings upon applications to establish lines and routes throughout the State for the transportation of freight and passengers, and to issue certificates of convenience and necessity for the operation of the same.

"3. That under the law, as set forth in said Title and said amendments, every person, firm or corporation who is engaged in, or engages in, the transportation of persons or property over regular routes between points in this State is designated as a common carrier or public utility, and as such is required to apply for and secure a certificate of convenience and necessity from the aforesaid Commission, before he, they or it can establish and operate any line or route between points in this State for the transportation of freight, express or passengers for hire.

"4. That defendant, George Pulos, also known as George Paulos, has undertaken to operate, and is now operating, for public service within this State, a freight truck line, and in so doing is carrying freight and merchandise for hire and for compensation over the public highways of this State, between Salt Lake City, Salt Lake County, Utah, and Vernal, Uintah County, Utah, via Duchesne, Duchesne County, Utah, serving points within said Uintah Basin, without having received from said Commission a certificate of convenience and necessity or permit, or without authorization so to do, and in violation of the provisions of said Title 91, Compiled Laws of Utah, 1917, and amendments thereto, commonly known as the Public Utilities Act, in this that said defendant for more than one year last past, for hire and for compensation, has accepted, and is now accepting, freight and merchandise from the general public whenever the same has been offered, and has been, and is now, transporting the same between said points, and has been, and is now, serving the points hereinbefore set forth; that said defendant, while operating and accepting freight and merchandise, as aforesaid, did, between November 1, 1928, and February 12, 1929, accept freight and merchandise from the Western States Grocery Company, Korns Warehouse, Utah Ice & Storage Company, Purity Biscuit Company, Salt Lake Hardware Company, in Salt Lake City, Utah, consigned to points within said Uintah Basin, and did, between said dates, for hire and for compensation, haul and transport said freight and merchandise from said Salt Lake City, Salt Lake County, Utah, over the public highways of this State, via Duchesne, Duchesne County, Utah, to points within said Uintah Basin, and did deliver the same to Cleveland Service Station, Roosevelt Lumber Company, Allen's Cash Store, Vernal Lumber Company, Ashton Brothers,

Woodward Furniture Company, Charlie Hatch, David Witmer, Ashley Co-op, and numerous other individuals, firms and corporations, the names of which are unknown to plaintiff, but are known to and within the knowledge of said defendant, all which individuals, firms and corporations are located within said Uintah Basin: that the exact dates upon which said shipments were made, and the names of the consignees of said shipments, are unknown to plaintiff, but are known to and within the knowledge of said defendant.

"5. That at no time has there been issued or granted to said defendant, by said Commission, a franchise or certificate of convenience and necessity, or a permit, to operate as a common carrier or public utility over the public highways of this State or at all, and that said defendant does not now have, and has not had, at any of the times hereinafter mentioned, such franchise or certificate of convenience and necessity or permit.

"6. That if the acts of said defendant, of which complaint is herein made, are allowed to go unchallenged, the efficiency and usefulness of the work of the Public Utilities Commission of Utah will be greatly impaired and held in contempt by said defendant and others, and its orders openly violated and disregarded, and for these reasons, by legal and proper action heretofore taken, the Public Utilities Commission of Utah now directs commencement of this proceeding on behalf of the State of Utah.

"7. That plaintiff is without any adequate or speedy remedy at law for the wrongs and injuries herein complained of, and practiced against it, by said defendant, and that unless defendant is enjoined from so unlawfully hauling and transporting freight and merchandise, as hereinbefore set forth, defendant will continue to do and perform said acts, and plaintiff will suffer irreparable injury.

"Wherefore, plaintiff prays judgment against said defendant that an alternative writ of injunction be issued, and that said defendant be required to show cause why he should not be perpetually enjoined and restrained from operating a freight truck line for the hauling of freight between Salt Lake City, Salt Lake County, Utah, and Vernal, Uintah County, Utah, via Duchesne, Duchesne County, Utah, and serving points within the Uintah Basin in said State, and be compelled and enjoined to obey the orders of the Public Utilities Commission of Utah, and for such other relief as to the court may seem just and equitable, and for costs."

The defendant filed a demurrer to the amended complaint. The demurrer reads as follows:

"Comes now the defendant and demurs to the amended complaint of the plaintiff on file herein upon the following grounds and for the following reasons:

"1. That said complaint does not state facts sufficient to constitute a cause of action against this defendant, or at all.

"2. That the plaintiff is without legal capacity to sue in the action, and under the circumstances set forth in plaintiff's complaint it not appearing from said complaint, or otherwise, that there have ever been any proceedings in this matter before the Public Utilities Commission of Utah as required by Title 91 of the Compiled Laws of Utah, 1917, and the amendments thereto, and until said proceedings have been had the said Public Utilities Commission has no legal capacity to sue in a plenary suit in the District Court, or otherwise.

"3. That the court has no jurisdiction of the subject matter of the action set forth in plaintiff's complaint."

The court below sutained the demurrer. The commission declined to further plead and elected to stand on the amended complaint whereupon the trial court dismissed the proceeding. The commission prosecutes this appeal from the judgment of dismissal. Two questions are presented for review by the assignments of error. (1) Does the commission have authority to prosecute an action such as this in the manner that it is attempting to prosecute it? (2) Does the complaint state a cause of action against the defendant?

In 1917, the Legislature of Utah created a public utilities commission, defined its powers and duties, and prescribed its procedure. Comp. Laws Utah 1917, title 91, chapters 1, 2, 3, 4, and 5. Among the provisions of the act are the following:

Section 4775: "There is hereby created a public utilities commission of Utah, and by that name the commission may sue and be sued."

Section 4818, as amended by Laws Utah 1919, special session, c. 14, as amended by Laws Utah 1925, c. 12:

"No railroad corporation, street railroad corporation, aerial bucket tramway corporation, gas corporation, electrical corporation, telephone corporation, telegraph corporation, heat corporation, automo-

bile corporation, or water corporation shall henceforth establish or begin construction or operation of a railroad, street railroad, aerial bucket tramway, or of a line, route, plant or system, or of any extension of such railroad or street railroad, aerial bucket tramway, or of a line, route, plant or system, without having first obtained from the commission a certificate that the present or future public convenience and necessity will require such construction; provided, that this section shall not be construed to require any such corporation to secure such certificate for an extension within any city or town within which it shall have heretofore lawfully commenced operations, or for an extension into territory either within or without a city or town contiguous to its railroad, street railroad, aerial bucket tramway, line, plant or system, and not theretofore served by a public utility of like character, or for an extension within or to territory already served by it, necessary in the ordinary course of its business; and provided further, that if any public utility, in constructing or extending its line, plant or system, shall interfere or be about to interfere with the operation of the line, plant, or system of any other public utility already constructed, the commission on complaint of the public utility claiming to be injuriously affected, may after hearing, make such order and prescribe such terms and conditions for the location of the lines, plants, or systems affected as to it may seem just and reasonable."

Section 4782, subd. 13: "The term 'automobile corporation,' when used in this title, includes every corporation or person, their lessees, trustees, receivers or trustees appointed by any court whatsoever, engaged in, or transacting the business of, transporting passengers or freight, merchandise or other property for compensation, by means of automobiles or motor stages on public streets, roads or highways along established routes within this state."

In 1925, the Legislature made provision for the payment of a tax on all automobile corporations engaged in the business of transporting passengers or freight, merchandise or other property for compensation, whether holding a certificate of convenience and necessity issued by the public utilities commission or not. Laws Utah 1925, c. 117. The definition of an "automobile corporation," however, was not changed under the act of 1925.

Section 4798: "The commission is hereby vested with power and jurisdiction to supervise and regulate every public utility in this state,

as defined in this title, and to supervise all of the business of every such public utility in this state, and to do all things, whether herein specifically designated, or in addition thereto, which are necessary or convenient in the exercise of such power and jurisdiction."

Section 4839: "It is hereby made the duty of the commission to see that the provisions of the constitution and statutes of this state affecting public utilities, the enforcement of which is not specifically vested in some other officer or tribunal, are enforced and obeyed, and that violations thereof are promptly prosecuted and penalties due the state therefor recovered and collected, and to this end it may sue in the name of the state of Utah. Upon the request of the commission, it shall be the duty of the attorney-general, or the district attorney of the proper district and county, to aid in any investigation, hearing, or trial under the provisions of this title, and to institute and prosecute actions or proceedings for the enforcement of the provisions of the constitution and statutes of this state affecting public utilities and for the punishment of all violations thereof."

Section 4842: "Whenever the commission shall be of the opinion that any public utility is failing or omitting, or about to fail or omit, to do anything required of it by law, or by any order, decision, rule, direction, or requirement of the commission, it shall direct thing, or about to do anything, or permitting anything, or about to permit anything, to be done contrary to or in violation of law or of any order, decision, rule, direction, or requirement of the commission, it shall direct the commencement of an action or proceeding in the district court in and for the county in which the cause or some part thereof arose, or in which the corporation complained of, if any, has its principal place of buiness, or in which the person, if any, complained of, resides, in the name of the state, for the purpose of having such violations or threatened violations stopped and prevented, either by mandamus or injunction. * * * It shall thereupon be the duty of the court to specify a time, not exceeding twenty days after the service of the copy of the petition, within which the public utility complained of must answer the petition, and in the meantime said public utility may be restrained. In case of default in answer, or after answer, the court shall immediately inquire into the facts and circumstances of the case. Such corporations or persons as the court may deem necessary or proper to be joined as parties, in order to make its judgment, order, or writ effective, may be joined as parties. The final judgment in any such action or proceeding shall either dismiss the action or proceeding or direct that the writ of mandamus or injunction issue or be made permanent as prayed for in the petition, or in such modified or other form as will afford appropriate relief. Any appeal may be taken to the supreme court from such

final judgment in the same manner and with the same effect, subject to the provisions of this title, as appeals are taken from judgments of the district court in other actions for mandamus or injunction."

It is the contention of the defendant that the public utilities commission is without authority to initiate a proceeding such as this in the district court without having first determined, in a proceeding before itself, that the person or corporation complained of is engaged in operating a public utility and is violating some order of the commission. Defendant's contention in such respect is untenable. By the public utilities act it is made the duty of the commission "to see that the provisions of the constitution and statutes of this state affecting public utilities * * * are enforced. * * * Whenever * * * any public utility is failing or omitting, or about to fail or omit, to do anything required of it by law * * * it [the public utilities commission] shall direct the commencement of an action or proceeding in the district court * * * in the name of the state, for the purpose of having such violations or threatened violations stopped and prevented, either by mandamus or injunction." Sections 4839, 4842. Thus, if the defendant at the time complained of was operating a public utility in this state contrary to law, the commission not only had the authority but it was its duty to bring a proceeding in the district court to enforce a compliance with the law. Nor is there any provision in the act which requires that any proceeding be had before the commission prior to the commencement of an action or proceeding before the district court. The act provides that an action or proceeding either for a writ of mandamus or writ of injunction shall be commenced in the district court "whenever the commission shall be of the opinion that any public utility is failing or omitting or about to fail or omit, to do anything required of it by law," etc. There is no language in the act which will bear the construction contended for by the defendant that the commission, before an action or proceeding is commenced in

the district court must hold a hearing before itself to determine whether or not the party complained of was engaged in operating a public utility at the time charged in the complaint. Such a hearing would be a useless proceeding, because obviously the determination of such fact by the commission would not be binding on the district court. If the commission were of the opinion that the defendant was operating a public utility at the time charged in the complaint, there was no occasion for holding a hearing to confirm such opinion. This court has heretofore entertained jurisdiction and reviewed cases similar to this case where the proceeding was commenced and prosecuted in the same manner as this proceeding was commenced and is being prosecuted. *Public Utilities Commission* v. *Jones,* 54 Utah 111, 179 P. 745; *Public Utilities Commission* v. *Garviloch,* 54 Utah 406, 181 P. 272; *State ex rel. Public Utilities Commission* v. *Nelson,* 65 Utah 457, 238 P. 237, 42 A. L. R. 849. While the opinions in those cases do not discuss the question of authority or lack of authority of the commission to initiate and prosecute those proceedings in the manner in which they were initiated and prosecuted, none the less such question was involved in those proceedings. Had this court believed that the commission was without authority to initiate and prosecute those proceedings in the manner that they were initiated and prosecuted, it would have been proper for this court sua sponte to have dismissed the proceedings without regard to the merits of the controversies involved.

A more serious question is presented when the amended complaint is considered with respect to the question of its sufficiency to state a cause of action. The language of section 4818, above quoted, applies to persons and corporations engaged in transporting passengers and freight for compensation by means of automobile or motor stage on public streets, roads, or highways along "established routes" within this state. *Public Utilities Commission* v. *Garviloch,* supra; Comp. Laws Utah 1917, § 4782, subd.

13. It will be noted that there is no averment of any fact in the amended complaint upon which the plaintiff elected to stand, from which it can be said or inferred that the defendant, at the time complained of, operated an automobile along an "established route" or any part thereof. Is the averment of such fact necessary to state a cause of action? We are of the opinion that the question must be answered in the affirmative. It was clearly within the province of the Legislature, within constitutional limitations, to determine what shall constitute an automobile corporation within the meaning of the act. The public utilities act does not require that all persons and corporations shall secure a certificate of convenience and necessity from the public utilities commission before engaging in transporting passengers or freight for compensation by automobile over the public highways of this state. The act applies only to automobile corporations as defined in the act. To be an automobile corporation within the meaning of the act, a person or corporation must be engaged in operating an automobile for the transportation of passengers or freight for compensation over public roads, streets, or highways along an "established route." It thus becomes of controlling importance to determine what the Legislature meant by the words "established routes." The complaint alleges that the defendant "has undertaken to operate and is now operating for public service within the state a freight truck line, and in so doing is carrying freight and merchandise for hire and for compensation over the public highways of this state between Salt Lake City, Salt Lake County and Vernal, Uintah County, Utah, by way of Duchesne, Duchesne County, Utah, serving points within said basin without having received from said commission a certificate of convenience and necessity or permit or without authorization so to do, and in violation of the provisions of Title 91, Comp. Laws Utah 1917, and amendments thereto." The amended complaint thus apparently proceeds upon the theory that the defendant by his alleged illegal act of transporting freight

for compensation along the public highways of this state, between Salt Lake City and Uintah Basin, has established a route between those two points within the meaning of the public utilities act. The word established is defined by lexicographers to mean "to make stable or firm, to fix immovably or firmly, to set in a place and make stable there, to settle, to confirm, to appoint or constitute for permanence, to enact, to ordain, to originate and secure the permanent existence of, to found, to institute, to create and regulate." Webster's New International Dictionary. See, also, *M. W. Dickey* v. *Maysville, Washington, Paris, & Lexington Turnpike Road Co.*, 37 Ky. (7 Dana) 113. It would seem reasonably clear that an established route must be a route that has a legal existence. One who merely uses the public highways for the transportation of freight for compensation cannot be said to have established a route. The authority to create, designate, permanently fix or establish a route, as defined in the public utilities act is by that act lodged in the commission and not in those who choose to use the public highways for the transportation of freight for compensation. It cannot well be said that a route along a public highway can be established by acts which are prohibited by law, nor by the acts of private persons or corporations. A route has a legal existence only when established by authority of law. The public utilities commission, and it alone, is granted power to establish routes for public utilities.

Prior to the enactment of the public utilities law there was no distinction between the right of one to use the public highways of this state for the transportation of freight or passengers for compensation and the right of one to use the public highways to transport freight and passengers without compensation. It is apparent, from reading the public utilities act, that the Legislature by the act intended to secure better public service from public utilities and that such service should be rendered for a reasonable compensation. It is quite improbable, however, that the Legislature intended to deprive any portion of the

population of the state from the benefits of public service for the transportation of freight and passengers, even though such service should not be regulated by the public utilities commission. It may be that the Legislature believed that in the outlying and sparsely settled portions of the state, the amount of business in transporting passengers or freight by means of automobile is so meagre that no one would go to the trouble and expense of complying with the rules and regulations of the commission, and yet the inhabitants of such portions of the state should not be deprived of public automobile service. Be that as it may, the fact remains that by the language used in the public utilities act, the Legislature limited the operation of the act, so far as automobile transportation is concerned, to those persons and corporations who engaged in carrying passengers or freight for compensation along "established routes."

The views herein expressed are in accord with and are supported by the conclusions reached by this court in the case of *Public Utilities Commission* v. *Garviloch,* supra. In that case the defendant Garviloch was engaged in operating a public utility without a certificate of convenience and necessity from the public utilities commission. The commission sought to enjoin Garviloch from transporting passengers for compensation by means of an automobile. The injunction was denied because it did not satisfactorily appear that Garviloch was engaged in transporting passengers in competition with one Eugene Chandler who held a certificate of convenience and necessity from the public utilities commission. Obviously, if an injunction will not issue unless it be established by the evidence that the person complained of has been or is about to engage in transporting passengers or freight in competition with one who holds a certificate of convenience and necessity from the commission, a complaint which does not allege such fact fails to state a cause of action.

The judgment appealed from is affirmed.

CHERRY, C. J., and STRAUP and EPHRAIM HANSON, JJ., concur.

FOLLAND, J. (dissenting).

I dissent from the decision of the court affirming the judgment of the lower court. I am in agreement with that part of the decision which holds that the public utilities commission may initiate proceedings such as this in a district court without having first determined in a proceeding before itself that the person or corporation complained of is engaged in operating a public utility and is violating the law or some order of the commission. This is the only proposition discussed in the briefs. Both parties agreed that this was the single question to be determined on this appeal. Having decided this point in harmony with the contention of appellant, the judgment of the district court should be reversed, and the cause remanded.

I am unable to agree with the conclusion, or the reasoning by which it is reached, that the complaint filed herein fails to state a cause of action because it does not aver that defendant operated an automobile over an "established route" or any part thereof, meaning thereby a route established by some order or action of the public utilities commission of Utah. The complaint, while not using the words "established route," sufficiently charges that the defendant is a common carrier and that as such he is operating a freight truck line transporting freight for compensation over and along the public highways between Salt Lake City and Vernal, via Duchesne, along a route established by himself. It is true the complaint does not state that this route has been established by the commission. On the other hand, it is alleged that the defendant has not received from the commission a certificate of convenience and necessity or a permit of any kind, and because of that fact he is operating without authorization and in violation of law. Had defendant's route been established by the issuance to him of a certificate of

convenience and necessity, which is the only way in which the commission establishes routes, there would be no need for this lawsuit. This action is made necessary because defendant has begun the operation of his freight line over a regular route between fixed termini without such a certificate. In doing this he ignores the commission and violates the law, if the allegations of the complaint are true. By his demurrer defendant admits the truth of such allegations, at least for the purpose of this case. By the provisions of Comp. Laws Utah 1917, § 4798, the commission was vested with power and jurisdiction to supervise and regulate every utility in the state, as defined, and to supervise the business of every such utility. Section 4818, in paragraph 1 thereof, provides: "No * * * automobile corporation * * * shall henceforth establish or begin * * * operation of a * * * line, route, * * * or system, or of any extension of * * * line, route, * * * or system, without having first obtained from the commission a certificate that the present or future public convenience and necessity * * * will require such construction."

Paragraph 2 of the same section provides that no public utility specified in paragraph 1 shall exercise any right or privilege under any franchise or permit without first having obtained such certificate. From the above it is clearly seen that the establishment or the beginning of operation of a line or route by an automobile corporation is not lawful until a certificate of convenience and necessity has been issued by the commission. The word "establish" is used in a manner to indicate that such a line may be established and may be operated by the automobile corporation even though such establishment and operation be in violation of law. The word is used in its primary sense as meaning to bring into being, to constitute, to create, to form, to locate, to originate. 21 C. J. 898. It is the establishment and operation of such an automobile line or route without the certificate which makes it unlawful. The unlawfulness of such an act in establishing and beginning the operation of such a

line or system does not depend upon previous action by the commission in constituting or establishing a route, nor does it depend upon the granting of a certificate and the establishment of a route by some competitor.

Defendant is alleged by the complaint to be a common carrier. This term is defined in section 4782, par. 14, as including every "automobile corporation; * * * and every other car corporation or person, * * * whatsoever engaged in the transportation of persons or property for public service, over regular routes between points within this state." In the same section, par. 13, "Automobile corporation" is defined to include "every corporation or person * * * engaged in, or transacting the business of, transporting passengers or freight, merchandise or other property for compensation, by means of automobiles or motor stages on public streets, roads or highways along established routes, within this state." These various sections must be construed in pari materia and with a view of giving effect to the statute and its various provisions, looking to the workability of the statute as a whole. By the prevailing opinion it is held that the words "established routes" as used in paragraph 13 of section 4782, restricts and limits the supervision and control of the commission to only such automobile corporations as operate a line over a route first established by the commission. I find no language in the statute which justifies any such construction. Such a view entirely ignores and defeats and makes inoperative and of no effect the provisions of section 4818, making it unlawful for anyone to establish or commence the operation of such a line, route, or system of motor truck transportation without first obtaining the required certificate. It also limits the jurisdiction of the commission, as provided in section 4798, and places beyond its control all such common carriers or public utilities as shall choose to establish and commence the operation of such a line or route and refuse to place themselves voluntarily under the control of the commission. It also defeats the purposes of the act by taking beyond the juris-

diction and control of the commission such common carriers as shall have been refused a certificate of convenience and necessity by application therefor to the commission, and will thereby make possible the operation of such a transportation line, in defiance of the commission and in violation of what seems to me the clear mandate of the law. The case of *Public Utilities Commission* v. *Garviloch*, 54 Utah 406, 181 P. 272, is cited by the prevailing opinion in support of its construction of the words "established route." That was a case initiated by the commission against the defendant whom it was alleged operated a stage line in competition with and over the same route used by one who had received from the commission a certificate of convenience and necessity. An injunction was sought but refused by the district court and this judgment was affirmed by this court. The reason, however, as is well stated in the head note, was:

"Though defendant in the operation of his automobile for hire was operating a public utility, yet, as his business was practically that of a taxicab driver, and he had no established route, he will not be enjoined from carrying passengers to destinations at points served by an automobile stage line, having a certificate from the Public Utilities Commission."

In the course of the opinion, Mr. Justice Frick says:

"In other words, if the defendant is merely carrying on a so-called hack or taxicab business upon request from those who may desire to be carried in a special conveyance which is under their direction and control for the time for which it is hired and at a price agreed upon for the services, then he is not operating on or over an established route within the purview of the act, and is not subject to regulation as though he were operating such a route."

Considerable was said in the briefs and argument with regard to the meaning of the words "established route" but the case was not one, as is the instant case, where the charge is that one is operating as a common carrier over a regular route between fixed termini in the transportation of freight, but merely where the defendant in the operation of his taxi-

cab business encroached upon the route of another who had a certificate of convenience and necessity. Mr. Justice Frick speaking to this point indicated that as to that case the solution of that question was not difficult. It is nowhere said that is the only way a route may be established, nor was the word "establish" as used in section 4818 considered. He said:

"Much was said in the argument about what constitutes an established route within the purview of the act and how and by whom such a route may be established. To our minds that question is not difficult of solution. In this case the route, within the purview of the act, was manifestly established over the public highway between the points stated in the complaint and designated in the certificate of convenience and necessity issued to Chandler. No doubt the defendant is not operating his automobile over a route which was established upon his application as was the Chandler route, but that is not controlling."

It was further held that if defendant operated his automobile over Chandler's route, or a substantial part of it, in opposition to or in competition with Chandler, he was doing so in violation of law, and that if Chandler's business was in fact unlawfully interfered with he would have a cause of action and might recover such damages as he could prove and obtain such other relief as may be just and equitable in the premises.

There is nothing in the statute which provides that the commission may or can establish any route or line or transportation system. It grants the commission power to regulate such and to issue certificates of convenience and necessity in proper cases. On the other hand the statute provides that no one may establish or commence the operation of such a line or system without a certificate from the commission. A line or system such as this is commenced, or established, or initiated when some individual or group of individuals, either personally or by forming a corporation, undertake to devote their efforts and capital to public service my making contracts with persons for the transportation of goods,

by holding themselves out to the public as a common carrier, by themselves fixing the points between which they intend to operate, by the acquiring of equipment and the employing of chauffeurs and others. Upon an application to the commission it may approve the establishment of such line or system by granting the certificate, and in doing so it may limit or shorten the line or route to be followed. When all is done we may then say the line or route has been lawfully established and the person or corporation operating it to be lawfully operating such route.

It seems also that the decision arrived at on the second proposition negatives and defeats the effectiveness of the decision on the first proposition. First it is said that the commission may bring such an action as this without previously having had a hearing or made an order, and this for the evident purpose of requiring those operating public utilities to submit to the control of the commission or desist from operating in violation of law. Then by the decision on the second proposition it is held, in effect, that the commission may not prosecute such a case as this without first having held some kind of a hearing and making some kind of an order wherein and whereby it shall have established a route over which the defendant can be said to be operating in violation of law.

It is not disclosed in the complaint whether this defendant in the operation of his transportation line or system, is merely ignoring the utilities commission, or whether he has heretofore made application for a certificate which has been refused, and his operation thus being in defiance of the commission and its action. The defendant either is, or is not, a common carrier and a public utility and his status could not be changed by fiat of the public utilities commission. A mere declaration by the commission would not make him a common carrier unless the business transacted by him brings him within that class. I cannot see how his status would be changed in any respect by the utilities

commission passing a resolution declaring the road between Vernal and Salt Lake City an "established route." If he is, as alleged, conducting a transportation business between these points on a regular route for the service of the public he is certainly a common carrier and is operating a public utility and because of such facts brings himself within the jurisdiction and control of the commission. I cannot think it was contemplated by the Legislature that only such persons and corporations operating as automobile common carriers who choose to submit themselves to the jurisdiction of the commission should be actually within that jurisdiction and that those who refuse or fail to thus submit themselves are entirely beyond the control of the law.

It was said by Mr. Justice Frick, speaking for the court, in *Gilmer* v. *Public Utilities Commission of Utah,* 67 Utah 222, 247 P. 284, 287:

"In view of the foregoing provisions, when considered in the light of the purposes of the Public Utilities Act, as they must be, there can be but little if any doubt respecting the right and power of the commission  to regulate and control the operation of auto stage lines or other motor vehicles which use the public highways and streets for the purpose of transporting either freight or passengers as common carriers."